[Civ. No. 39202. First Dist., Div. One. Dec. 16, 1976.]

MICHAEL ALEXANDER BORTIN, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND
COUNTY OF SAN FRANCISCO, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Larson, Stang & Weinberg and Doron Weinberg for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Dane R. Gillette, Deputy Attorneys General, for Real Party in Interest.

## OPINION

ELKINGTON, J.—In this proceeding in mandate we first denied, without hearing or opinion, petitioner Michael Alexander Bortin's petition as unmeritorious. Thereafter the Supreme Court granted a hearing following which the matter was retransferred to this court "with directions to issue an alternative writ of mandamus to be heard . . . when the proceeding is ordered on calendar. (See *Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286 [124 Cal.Rptr. 204, 540 P.2d 44].)" Thereafter, having considered the cause in the light of *Murgia,* we again denied Bortin's petition. On his petition for rehearing of the matter we concluded that we had probably erred, and granted the rehearing.

We therefore again consider Bortin's contentions.

In the proceedings below, Bortin was charged with perjury, a violation of Penal Code section 118. It was alleged that he had made a material false statement, under oath, in an application to the Department of Motor Vehicles for a driver's license. Bortin moved for a dismissal of the charge on the ground that he was the object of "invidious selective prosecution" and was thus denied equal protection of the laws, in abrogation of the rule expounded in *Yick Wo* v. *Hopkins,* 118 U.S. 356 [30 L.Ed. 220, 6 S.Ct. 1064]. The motion was denied.

Thereafter, with different counsel and relying on *Murgia,* Bortin made what he described as an "unusual" motion. We interpret it as a renewal of the motion (1) to dismiss on the ground of invidious selective prosecution, and that prior to the hearing thereon the court (2) order certain discovery against the People. Without the requested discovery Bortin conceded that he would be unable to make the desired showing of invidious selective prosecution. The superior court will be deemed to have permitted renewal of the earlier motion, for it thereupon heard and considered it.

In support of his motion Bortin offered several written declarations made under penalty of perjury. We summarize their relevant and material allegations. There was alleged a belief that the perjury charge was "motivated entirely by the prosecution's awareness of [Bortin's]

political beliefs in opposition to American foreign and domestic policies, and [his] association with others who hold such views, including some persons whom the prosecution believes to be guilty of other criminal acts of which [Bortin was] not accused." It was further alleged that there was "discriminatory animus on the part of the District Attorney's office;" and that as a result of investigation, and on "information and belief," it appeared "that *no* previous prosecution for false information supplied in a driving license application under the felony perjury statute has ever been instituted in the City and County of San Francisco, though literally thousands of San Franciscans have been found to have fraudulently obtained licenses." And it was made to appear from the declarations generally that, with one exception, the State of California including its Department of Motor Vehicles and its many district attorneys' offices, had adopted, and pursued, a policy not to criminally prosecute anyone for such an offense as was charged against Bortin.

The superior court denied Bortin's motion, and thus by necessary implication denied the requested discovery.

We consider, as directed, the impact of *Murgia* upon Bortin's superior court motion and upon the proceedings here before us.

In *Murgia* several members of the United Farm Workers Union had been charged with various misdemeanors in the municipal court. They contended that law enforcement officers of the entire county had "engaged in a deliberate, systematic practice of discriminatory enforcement of the criminal law against UFW members and supporters." They filed a discovery motion seeking to obtain documentary and testimonial information and evidence from law enforcement officials in relation to their claim. By more than 100 affidavits and much other competent evidence, and as found by the superior court, "the defendants established a prima facie case of discriminatory enforcement of the laws." Nevertheless the municipal court denied the discovery motion, "because it felt that existing California decisions" afforded the defendants no relief.

On the defendants' petition for mandate the high court held: "[A] criminal defendant may defend a criminal prosecution on the ground

that he has been the subject of such 'intentional and purposeful' invidious discrimination. In light of the materiality of this defense, traditional principles of criminal discovery mandate that defendants be permitted to discover information relevant to such a claim. Accordingly, the trial court erred in barring all access to such information in the possession of the prosecution." (15 Cal.3d, p. 306.)

The *Murgia* court broadly considered the concept of selective enforcement of the criminal law. It concluded that all such selective enforcement was not constitutionally condemned. It quoted and followed the ruling of *Oyler* v. *Boles*, 368 U.S. 448, 456 [7 L.Ed.2d 446, 82 S.Ct. 501]: " '[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.' " (15 Cal.3d, p. 299.) The selectivity, it held, must be "invidious." Care was taken by the court to define its usage of the term; it was "only 'deliberate' (i.e., 'purposeful or intentional') discriminatory enforcement based upon an *'unjustifiable' (i.e., 'invidious') standard* which is proscribed by the equal protection clause." (15 Cal.3d, p. 300; italics added.) While the court understandably hesitated to delineate the bounds of *unjustifiable* selective enforcement, its existence was found when it was based upon " 'the exercise of protected First Amendment activities,' " or "religion," or "race," or "labor union" membership, or the singling out of a class for special prosecutorial treatment such as "black or white, Jew or Catholic, Irishman or Japanese, United Farm Worker or Teamster."

Illustrating the distinction between legitimate, and "unjustifiable" and thus "invidious," selective enforcement of the criminal law, the *Murgia* court stated: "Although a selective enforcement policy based on organizational association is presumptively suspect, prosecutorial authorities may well be able to justify such a selective enforcement policy when the 'organization' in question is itself involved in perpetrating criminal activities. Under such circumstances, legitimate law enforcement interests may justify a policy which concentrates enforcement operations on the conduct of members of a particular 'gang' of lawbreakers. By demonstrating the criminal proclivities of the organization involved in such a case, the People may rebut any inference that its selective enforcement policy rests on an invidious basis." (15 Cal.3d, p. 303, fn. 14.)

Adverting to the case there under consideration, the *Murgia* court discussed the petitioners' *right to discovery*. Such right, it was held, should be given effect according to "traditional principles of criminal discovery." (15 Cal.3d, p. 306.) These principles had earlier been tersely stated by Justice Tobriner, the author of *Murgia,* in the case of *Ballard* v. *Superior Court,* 64 Cal.2d 159, 167 [49 Cal.Rptr. 302, 410 P.2d 838], as follows: "[O]ur fundamental concern [is] that an accused be provided with a maximum of information that may illumine his case. . . . A defendant's motion for discovery *must nevertheless . . . be sustained by plausible justification.*" (Italics added.) More recently the high court in *Pitchess* v. *Superior Court,* 11 Cal.3d 531, 536 [113 Cal.Rptr. 897, 522 P.2d 305], stated: "[A]n accused in a criminal prosecution may compel discovery by *demonstrating* that the requested information will facilitate the ascertainment of the facts and a fair trial." (Italics added.)

■ Often, of course, the required "plausible justification" for criminal discovery is readily apparent; but sometimes it is not. In the latter situation, the defendant will be required to make some "prima facie" (i.e., "plausible") showing in aid of his motion. The showing, as indicated, need not be strong, but without it the motion for discovery will properly be denied. (*People* v. *Cohen,* 12 Cal.App.3d 298, 323-324 [90 Cal.Rptr. 612]; *People* v. *Sewell,* 3 Cal.App.3d 1035, 1039 [83 Cal.Rptr. 895]; *People* v. *Mason,* 259 Cal.App.2d 30, 41 [66 Cal.Rptr. 601].) And such a showing is patently required when the discovery sought would be unduly burdensome to the People. (See *Engstrom* v. *Superior Court,* 20 Cal.App.3d 240, 245 [97 Cal.Rptr. 484].)

We advert now to the subject proceedings in the superior court, and *Murgia*'s application thereto.

■ Bortin, as we have pointed out, made no contention that he had established, or could establish, the claimed invidious selective prosecution without the requested discovery. He recognized his burden of establishing *plausible justification* for his motion, and *demonstrating* that the discovery sought would facilitate the ascertainment of relevant facts and a fair trial. He makes a similar concession here, stating that the "allegations [in support of the motion] were intended to demonstrate a sufficient basis to justify the granting of discovery and the opportunity

[upon such discovery] to" make his showing of invidious selective prosecution.*

In response to Bortin's motion and its supporting declarations the district attorney made no evidentiary response whatever. Nor was request made that the trial court consider relevant matters judicially noticeable, including facts and propositions of generalized knowledge, and superior court records bearing on the case. (See Evid. Code, §§ 451, subd. (f), 452, subds. (d), (g).) Further, no objection was made to the conclusionary and "information and belief" allegations of Bortin's evidentiary showing.

As noted, "plausible justification" for discovery need not have been a strong showing. Here, the prosecutor must reasonably be deemed to have defaulted as to any factual defense he may have had to Bortin's discovery request. We of course have no certain knowledge that the prosecutor could have traversed or otherwise impeached Bortin's unweighty evidence. Had he been able to, and done so, we are of the opinion that the superior court, in its discretion, might reasonably have concluded that Bortin's efforts had fallen short of the required *"plausible* justification" (italics added) for the requested discovery. But upon the uncontroverted, and unobjected to, showing before us we now conclude, as a matter of law, that the discovery should have been allowed.

In our opinion, however, it would best serve the ends of justice to remand the cause to the superior court, and there permit Bortin to renew his motion for discovery with such additional evidentiary support as he may choose to offer. Upon the renewed motion, the People may traverse

---

*On making the motion Bortin stated: "With regard to our motion this morning, the contention of the motion, I should just clarify that we are asking here for a very simple thing, only a preliminary matter; that is, we are asking the court to allow us a hearing and allow us discovery pending that hearing so that we may prove our claim. We do not pretend that we have proved the claim. We do not even pretend that we have made a prima facie showing sufficient to shift the burden to the People. That is the ultimate test that we have to conform to, but that is not what we have done thus far. We will concede that is not what we have done thus far, but what we have done is made a sufficient showing to justify a hearing and to justify discovery, at which time we will be required to make a sufficient showing to shift the burden. So that our position is that this is a two-step process. First we have to present the court with enough reason to believe that there may be a prima facie case here to allow us to prove that prima facie case, and at the second stage if we prove our prima facie case, then the burden is to be shifted to the People. [¶] As to the prima facie showing that we are required to make for the purpose of obtaining discovery and having a hearing, that I believe we have clearly made. We have presented affidavits to the court based on investigation with the DMV and based on investigation with the District Attorney's Office here."

Bortin's evidentiary showing by such proof, if any there is, as may be available to them.

We find cause to depart from the terms of the heretofore issued alternative writ. (See 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 169, p. 3933.) The superior court will set aside its order of May 20, 1976, denying Bortin's motion, and will take further proceedings not inconsistent with what we have said. The alternative writ is discharged.

Molinari, P. J., and Sims, J., concurred.