[L.A. No. 30804. Dec. 12, 1977.]

KENNETH GRIFFIN et al., Petitioners, v.
THE MUNICIPAL COURT FOR THE DESERT JUDICIAL
DISTRICT OF RIVERSIDE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Gary Scherotter, Erwin, Anderholt & Scherotter and David W. Agnew for Petitioners.

No appearance for Respondent.

Byron C. Morton, District Attorney, and Jeffrey J. Prevost, Deputy District Attorney, for Real Party in Interest.

## OPINION

**TOBRINER, J.**—We face here the narrow question whether the instant criminal defendants[1] may obtain a discovery order directing the prosecutor to produce information relevant to defendants' claim that a certain penal statute is being discriminatorily enforced against them. We conclude that under our decision in *Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286 [124 Cal.Rptr. 204, 540 P.2d 44], defendants, having made a prima facie showing of their claim of discriminatory enforcement, are entitled to pursue discovery with respect to their defense.

Defendants Griffin and Pounds are former Riverside County sheriff's deputies. Griffin, who is black, and Pounds, who is white, were jointly charged in July 1976 with violating Penal Code section 147 (willful inhumanity or oppression of a prisoner).[2] A declaration filed in support of defendants' motions to dismiss stated that the charges arose from allegations that defendants locked a juvenile in a closed patrol car on a hot evening in July with the automobile heater running. Griffin alleges that the charges would not have been filed against him if he were not black; Pounds alleges that no criminal charges would have been filed against him if his partner for that evening had been white, or if he had acted alone. Defendants' declarations stated on information and belief that in the preceding 10 years many white deputies acting alone or in concert with other white officers had committed acts of inhumanity without legal sanction. The declarations alleged nine unprosecuted

---

[1]Although defendants in the underlying criminal prosecutions are technically petitioners in the instant discovery proceedings, for convenience we shall refer to these individuals as "defendants" throughout this opinion.

[2]Penal Code section 147 provides that ". . . Every [peace] officer who is guilty of willful inhumanity or oppression toward any prisoner under his care or in his custody, is punishable by fine not exceeding two thousand dollars, and by removal from office."

incidents of prisoner beatings and mistreatment by white officers and the approximate dates on which those incidents took place.[3]

In September 1976, defendants filed substantially similar discovery motions seeking production of all sheriff's department records, notes, or memoranda of departmental investigations into incidents of violent, cruel, or inhuman conduct toward prisoners during the preceding 10 years.[4] The trial court granted the motions after an *in camera* review of

---

[3]In pertinent part Pounds' declaration stated: "I am informed and believe and thereon declare that certain white officers or white officers working together were the subject of personnel investigations by the Riverside Sheriff's Department following allegations that they committed acts of inhumanity or oppression toward a prisoner. I am informed and believe the officer[s'] names, alleged acts, and disposition of allegation are as follows: 1. Deputy [J. W.], while working in the Indio jail during 1971 or 1972, severely beat a prisoner. Deputy [W.], according to my information, was terminated but not prosecuted. 2. Deputy [S. A.], while working in the Riverside jail during 1975, threatened to and did break the arm of a prisoner. Deputy [A.], according to my information, was terminated, not prosecuted and later reinstated. 3. Deputy [J. L.], while working in the Indio jail during 1972 or 1973 (date uncertain) severely beat a prisoner. Deputy [L.], according to my information, was not disciplined, discharged or prosecuted. 4. Deputy [H. H.], while working in the Indio jail during 1972 or 1973 (date uncertain) severely beat a prisoner along with Deputy [L.] (referred to in paragraph 3 above). Deputy [H.], according to my information, was not disciplined, discharged or prosecuted. 5. Deputy [D. R.], while working in the Indio jail during 1971 or 1972 (date uncertain), severely beat and mistreated a prisoner. Deputy [R.], according to my information, was disciplined, but not discharged or prosecuted. 6. Deputy [G. M.], while working in the Indio jail during the past five years (date uncertain), severely beat and mistreated a prisoner. Deputy [M.], according to my information, was not disciplined, discharged or prosecuted. 7. Deputy [K. C.], while working in the Indio jail during 1975 or 1976 (date uncertain) severely beat and mistreated a prisoner. Deputy [C.], according to my information, may have been disciplined, but was not discharged or prosecuted. 8. Deputy [W.], while working on patrol duties on or about July 4, 1976, mistreated a juvenile prisoner taken into custody at Lake Cahuilla. This occurred in the presence of one lieutenant and two sergeants of the Riverside Sheriff's Office. According to my information, Deputy [W.] was not disciplined, discharged, or prosecuted. 9. Deputy [D. N.], while working patrol duties on July 3, 1976, observed and participated to the same extent as I in the events which form the basis for this prosecution. Deputy [N.] was interviewed in connection with the instant matter and the information obtained from him parallels the information I gave in my interviews to the Riverside Sheriff's Office. These interviews demonstrate that our roles, if any, were identical. Deputy [N.] was not disciplined, discharged or. prosecuted." Griffin's declaration was nearly identical.

[4]The discovery motions' paragraph 16, which the sheriff's department challenged, sought the following material: "All records, reports, handwritten or typewritten notes, memoranda, correspondence, inter-office memos, transcripts of tape recorded interviews, photographs, tape recordings, oral or written statements and physical evidence relating to all investigation by any officer of the Riverside Sheriff's office, into incidents of alleged violent, cruel, inhuman or oppressive conduct committed by any other officers of the Riverside Sheriff's office upon any prisoner in custody of the Riverside Sheriff's office or any other law enforcement agency during the period September 1, 1966 through September 1, 1976, whether or not administrative, disciplinary or criminal prosecution

some of the allegedly privileged records requested,[5] but the Court of Appeal ordered the discovery orders set aside on the grounds that the defense requests were "overly broad and [permit] the Real Parties in Interest to engage in a fishing expedition." We denied a hearing in the matter.

Griffin responded to this adverse ruling by narrowing his discovery request and filing a new motion.[6] This supplemental motion, which incorporated the declarations defendants had filed with their original motions to dismiss (see fn. 3, *ante*), requested a statistical summary of sheriff's department records for the preceding 14 years,[7] disclosing, inter alia, annual figures as to (1) the number and percentage of black officers employed by the department, (2) the number and percentage of black officers terminated by the department, (3) the total number of investigations conducted by the department into alleged violations of section 147 and the number of such investigations which involved a black officer, and, finally (4) the total number of prosecutions commenced by the county for violation of section 147 and the number of such prosecutions which involved a black officer.[8] In addition, defendants applied for and received a subpoena duces tecum which paralleled the earlier broad request. (See fn. 4, *ante*.)

resulted therefrom. *Murguia v. Municipal Court* (1975) 15 C3 286; 124 Cal.Rep. 204." The department also objected to paragraphs 20 to 23, which essentially restated paragraph 16 somewhat more specifically.

[5]The prosecution requested *in camera* review pursuant to Evidence Code section 1040, which provides in relevant part that "(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing such information, if the privilege is claimed by a person authorized by the public entity to do so and: . . . (2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice. . . . In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered." In its *in camera* review, the trial court reviewed records referred to in paragraph 16 and ordered records of 14 incidents delivered to the defense. The trial court granted paragraph 16 "with modification that [it] be granted as relates to treatment of individual prisoners & suspects also as to officers responsibilities in re: to ride-alongs."

[6]Defendant Pounds later joined in the requested discovery by motion in court.

[7]Griffin selected the 14-year period because that time covered the tenure of the current Riverside County Sheriff.

[8]Defendants' motion requested the following statistical information:

"A. The number of deputy sheriffs authorized per fiscal year during the period;

"B. The total number of deputies who commenced employment in each fiscal year during the period;

"C. The total number of deputy sheriffs commencing employment each fiscal year during the period who [were] black;

"D. The total number of deputies terminated in each fiscal year of the period;

On the People's motion, however, the municipal court quashed the subpoena and denied in its entirety defendants' motion for supplementary discovery. The superior court and the Court of Appeal thereafter denied defendants' petitions for writs of mandate, the Court of Appeal concluding that "[n]either the District Attorney nor the Sheriff is required to prepare a statistical summary for use by petitioners. Moreover, the breadth of the discovery sought remains excessive." We granted defendants' petition for hearing.

 As we explain, we believe that defendants correctly contend that the denial of their motion for statistical summaries of police records deprives them of evidence which might support a defense to the criminal charge pending against them and therefore denies them their right to a fair trial. Accordingly, we have concluded that defendants are entitled to obtain such statistical information from the prosecutorial authorities.[9]

---

"E. The total number of deputies terminated in each fiscal year of the period who [were] black;

"F. The ratio of black deputies to white deputies each year of the period;

"G. The total number of personnel investigations conducted each fiscal year during the period, into complaints of alleged violent, cruel, inhumane, or oppressive conduct committed by any deputy against any prisoner in custody;

"H. Of the total number of personnel investigations referred to in G above, state the number of investigations where a black deputy was the object of the investigation during each fiscal year of the period;

"I. Of the total number of investigations referred to in paragraph G above, state the total number of complaints which were found to be groundless;

"J. Of the total number of investigations referred to in paragraph G above, state the total number of deputies disciplined as a result of the complaint in each fiscal year of the period;

"K. Of the total number of the deputies disciplined as referred to in the previous request, state the total number of deputies who were black per fiscal year of the period;

"L. State the total number of deputies who received some form of discipline whose matter was referred to Riverside County District Attorney for prosecution under Section 147 of the Penal Code per fiscal year of the period;

"M. State the total number of black deputies who received some form of discipline whose matter was referred to Riverside County District Attorney for prosecution under Section 147 of the Penal Code per fiscal year of the period;

"N. State the total number of deputies who were prosecuted under Section 147 of the Penal Code per fiscal year during the period;

"O. State the total number of deputies prosecuted under Section 147 of the Penal Code during each fiscal year of the period, who were black."

[9] Although defendants also contend that the municipal court order quashing the subpoena should be overturned, we conclude that defendants are not entitled to such relief. As we stated in *Hagan* v. *Superior Court* (1962) 57 Cal.2d 767, 770-771 [22 Cal.Rptr. 206, 371 P.2d 982], "in the orderly administration of justice, and in support of a sound judicial policy, a court, in the absence of unusual or changed circumstances, . . . is justified, in its discretion, in refusing to consider repetitive applications of the same petition." The subpoena request in question precisely parallels the request that was rejected in defendants' earlier writ proceeding (see fn. 4, *ante*), and constitutes a

■ In *Murgia* v. *Municipal Court, supra,* 15 Cal.3d 286, we followed a principle, long recognized in federal law,[10] that discriminatory enforcement of the laws may be a valid defense in a case in which the defendant can establish deliberate invidious discrimination by prosecutorial authorities. We found that defendants' discriminatory enforcement defense did not "rest simply upon allegations of laxity of enforcement; instead, defendants . . . clearly alleged that the Kern County law enforcement authorities undertook a practice of 'intentional, purposeful and unequal enforcement of penal statutes' against [defendants]." (*Murgia* v. *Municipal Court, supra,* 15 Cal.3d 286, 301.) Since defendants had established a specific prima facie showing of such discriminatory prosecution, they were entitled to pursue discovery against the prosecution with respect to the claim of discriminatory enforcement.

Unlike civil discovery, criminal discovery in California is strictly a judicial creation. In *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 536-537 [113 Cal.Rptr. 897, 522 P.2d 305], we held that in contrast to the formal statutory requirements for civil discovery, "an accused in a criminal prosecution may compel discovery by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial. [Citations.] The requisite showing may be satisfied by general allegations which establish some cause for discovery other than 'a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.' [Citations.]"

Applying this reasoning to the defense of discriminatory enforcement, we held in *Murgia* that the defendants' right to discovery should be given effect according to "traditional principles of criminal discovery." (*Murgia* v. *Municipal Court, supra,* 15 Cal.3d 286, 306.) ■ While at the pretrial stage we are not able to determine what evidence a defendant will ultimately proffer in support of his claim, a motion for discovery "must nevertheless describe the requested information with at least some degree of specificity and must be sustained by plausible justification." (*Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 167 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416].) We concluded in *Murgia* that defendants' prima facie showing of a conscious policy of selective

"repetitive application" for the same relief. Accordingly, without passing on the merits of the subpoena request, we conclude that this aspect of the municipal court's ruling should not be overturned.

[10]See, e.g., *Oyler* v. *Boles* (1962) 368 U.S. 448 [7 L.Ed.2d 446, 82 S.Ct. 501]; *Two Guys* v. *McGinley* (1961) 366 U.S. 582 [6 L.Ed.2d 551, 81 S.Ct. 1135]; *Yick Wo* v. *Hopkins* (1886) 118 U.S. 356 [30 L.Ed. 220, 6 S.Ct. 1064].

enforcement against them satisfied that requirement of "plausible justification."

■ In the present case, the declarations filed by defendants are clearly sufficient to justify discovery under the foregoing standard. In the declarations, defendants specify several incidents of misconduct as serious as or more serious than their own involving nine named white officers which did not result in prosecution, and thereby establish "plausible justification" for believing that invidious discrimination may have played a role in the decision to pursue the present prosecution. Defendants' supplemental motion itself limits the discovery request to a statistical summary of the data necessary to prepare the defense of discriminatory enforcement, and requires disclosure only of the information relating to incidents of mistreatment of prisoners.[11] Such a statistical summary will avoid the possibility of impairing the confidentiality of sensitive information irrelevant to the asserted defense.[12] Moreover, it is evident that defendants cannot readily obtain the information requested through their own efforts, since, as was the case in *Pitchess*, the sheriff's department maintains exclusive control over the records necessary to substantiate the asserted defense. (See also *Hill* v. *Superior Court* (1974) 10 Cal.3d 812, 817 [112 Cal.Rptr. 257, 518 P.2d 1353].)

Finally, a statistical summary is clearly relevant since it would tend to show, directly or circumstantially, the application of different policies for disposition of cases involving white and black officers. The first step in the present defendants' proof of discrimination may well be to demonstrate a significant disparity between blacks' representation in the population of Riverside County sheriff's deputies, and blacks' representation in the group of disciplined, discharged, and prosecuted deputies. Past discriminatory prosecution cases uniformly accept a defendant's use

---

[11]Defendants have acknowledged our authority to modify their supplemental discovery request if the 14-year period is thought excessive. We conclude that the 14-year period is reasonable and appropriate.

[12]Upon rehearing before appeal, the trial court interpreted its order granting the original discovery motion: "The order doesn't provide that the file of a deputy Sheriff is to be made available to the defense. It simply is those records, etcetera, which apply to any allegations of a violent, cruel, inhuman or oppressive conduct toward any prisoner. Now, this doesn't go into going through the personnel file of every deputy, or going through the personnel of the deputy that might have been charged with having committed some violent, cruel, inhuman or oppressive conduct toward a prisoner. It's just those reports that relate to that incident." (Transcript of hearing for clarification of court's order, Nov. 18, 1976.) While the trial court did not have the issue of the supplemental motion before it at the time, its reasoning that the discovery allowed would avoid divulgence of potentially privileged material is even more apposite to the statistical summary at issue here.

of statistical proof in this way to make out a prima facie case of invidious discrimination. (See, e.g., *Murgia* v. *Municipal Court, supra,* 15 Cal.3d 286, 305 and fn. 17; *People* v. *Gray* (1967) 254 Cal.App.2d 256, 260-261 [63 Cal.Rptr. 211]; *People* v. *Harris* (1960) 182 Cal.App.2d Supp. 837, 839 [5 Cal.Rptr. 852]; cf. *Alexander* v. *Louisiana* (1972) 405 U.S. 625, 629-631 [31 L.Ed.2d 536, 92 S.Ct. 1221].)

The rulings on defendants' discovery motions have placed defendants in an impossible position. These rulings decree in essence that defendants cannot properly claim the raw data necessary to the defense because this procedure would permit a "fishing expedition," and that defendants have no right to a summary of that data because the prosecution is under no duty to prepare one. It may be that granting defendants' requests will cause embarrassment to the sheriff's department. Yet no unreasonable incursion or publication of irrelevant, confidential information is likely to occur. And denial to defendants of their discriminatory enforcement defense by the means employed in these proceedings would nullify defendants' legal right to present a defense which we have declared available.

Accordingly, we conclude that defendants' allegations concerning the prior practice of the Riverside County Sheriff's Department constitute a prima facie showing of discriminatory enforcement entitling defendants to the statistical summaries they seek.

Let a peremptory writ of mandate issue, directing the trial court to vacate its order denying discovery and to proceed in accordance with the views expressed herein.

Bird, C. J., Mosk, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.