[No. A025722. First Dist., Div. Five. Feb. 21, 1985.]

THE PEOPLE, Plaintiff and Appellant, v.
RICHARD OCHOA et al., Defendants and Respondents.

**COUNSEL**

John K. Van de Kamp, Attorney General, Eugene Kaster and Kristofer Jorstad, Deputy Attorneys General, for Plaintiff and Appellant.

R. Charles Johnson and Madeline McDowell, under appointments by the Court of Appeal, and Howard Hanson for Defendants and Respondents.

**OPINION**

**KING, J.**—The People appeal from the trial court's order dismissing criminal charges against respondents, Richard Ochoa and Lester Harris, follow-

ing the People's failure to comply with respondents' discovery request regarding discriminatory law enforcement. We affirm the trial court's order.

Ochoa and Harris, inmates at San Quentin Prison, were each charged with possessing a weapon as a prisoner. (Pen. Code, § 4502.) Both made motions to dismiss the charges alleging discriminatory enforcement of section 4502 against racial minorities by the Marin County District Attorney and San Quentin Prison. Ochoa is Chicano and Harris is black. They also filed discovery requests to bolster their evidence of discriminatory law enforcement.

Ochoa and Harris supported their motions to dismiss with two declarations. Frank Cox, chief deputy public defender of Marin County, stated that, as of June 30, 1979, 57.6 percent of the inmates at San Quentin were from racial minorities. Of those weapons cases referred to the public defender's office from January 1982 to June 1983, 15 out of 21 defendants (71.4 percent) were minorities. Terry Zimmerman, deputy public defender, stated that the district attorney received 182 referrals from San Quentin for violations of Penal Code section 4502 during 1982. From January 1982 to November 1983, 16 out of 23 defendants (69.5 percent) referred to the public defender from San Quentin were minorities. The racial makeup of San Quentin's inmates was 36 percent white, 21 percent black, 19 percent Mexican-American, and 24 percent "other."

In response, the People filed declarations by John Connolly, the deputy district attorney who issued the complaints against Ochoa and Harris. He stated that he had not considered the defendants' race in issuing the complaints and that the district attorney's office had no such policy.

The court ordered production of copies of all Department of Justice forms 8715 (hereafter referral forms) received by the district attorney from January 1, 1982, to November 30, 1983. These forms are filled out by San Quentin prison officials and sent to the district attorney with all referrals for inmate prosecution. The form contains identification of the inmate's race. James Ingram, associate warden at San Quentin, testified that from January 1982 to November 1983, San Quentin made 541 referrals on weapons offenses to the district attorney. He said it would take a minimum of 16 hours to compile the information requested by the court. The People refused to comply with the discovery order and the court therefore dismissed the charges against Ochoa and Harris. On appeal, the People contend the trial court abused its discretion in ordering discovery of the referral forms.

The People first contend the trial court erred in granting discovery because Ochoa and Harris did not make a prima facie showing of discriminatory enforcement. ▮ In *Murgia* v. *Municipal Court* (1975) 15 Cal.3d

286 [124 Cal.Rptr. 204, 540 P.2d 44], the Supreme Court held that "traditional principles of criminal discovery" should apply to discriminatory enforcement claims. (*Id.*, at p. 306.) One of these principles is that a motion for discovery must "describe the requested information with at least some degree of specificity and must be sustained by *plausible justification.*" (*Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 167 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]; italics added.) In *Murgia,* the trial court found that the defendants had made a prima facie case of selective enforcement, so this obviously satisfied the plausible justification requirement. Defendants can meet the requirements for discovery, however, without establishing a prima facie case of selective prosecution. (See *People* v. *Municipal Court (Street)* (1979) 89 Cal.App.3d 739, 748 [153 Cal.Rptr. 69].)

The showing of plausible justification can be made by "general allegations which establish some cause for discovery other than 'a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.'" (*Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 537 [113 Cal.Rptr. 897, 522 P.2d 305], quoting *People* v. *Cooper* (1960) 53 Cal.2d 755, 770 [3 Cal.Rptr. 148, 349 P.2d 964].) The showing "need not be strong." (*Bortin* v. *Superior Court* (1976) 64 Cal.App.3d 873, 878 [135 Cal.Rptr. 30].) To set aside the trial court's order on discovery, the appellate court must find an abuse of discretion. (*Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 171 [84 Cal.Rptr. 718, 465 P.2d 854].)

■ The trial court below did not abuse its discretion in ordering production of the referral forms. The statistical evidence supporting the defendants' allegations of selective prosecution was not strong. The weakness of their showing, however, was caused largely by the People's control over more reliable evidence. "Evidence of discriminatory enforcement usually lies buried in the consciences and files of the law enforcement agencies involved and must be ferreted out by the defendant." (*People* v. *Gray* (1967) 254 Cal.App.2d 256, 266 [63 Cal.Rptr. 211].) In view of the defendants' difficulty in providing a stronger showing of discriminatory enforcement, the proffered statistical disparities provided sufficient justification for the court's discovery order. The best evidence of discriminatory prosecution would be a comparative breakdown by race of inmates who are referred to the district attorney for prosecution versus those who are actually prosecuted on weapons charges. The trial court's order required production of evidence from which such a comparison could be made, in a method that would be least onerous to the People.

The People claim the declaration of John Connolly negated the showing of plausible justification. The court could properly discount the value of this

oral declaration denying discriminatory prosecution, when the People had access to stronger evidence in the referral forms. (Evid. Code, § 412.) The mere introduction of evidence that contradicts the defendants' allegations does not automatically destroy justification for the discovery order. (*People v. Municipal Court (Street)*, *supra*, 89 Cal.App.3d at p. 747.)

Finally, the People maintain the court erred in requiring production of the referral forms because the information they contain about the inmates' race is unreliable. The reliability of the forms only affects their evidentiary weight in the trial court's ultimate determination of the motion to dismiss. It has little impact on review of the court's discovery order. Additionally, Ochoa and Harris claim that the district attorney is selectively prosecuting inmates based on their race. If this claim is correct, the discrimination would probably be based on the indications of the inmate's race contained on the referral forms, regardless of their accuracy.

We affirm the orders dismissing the charges against Harris and Ochoa.

Low, P. J., and Haning, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 24, 1985.