[No. A028074. First Dist., Div. Three. Aug. 27, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK JOSEPH MOYA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Parts II, III and V are not certified for publication. (Cal. Rules of Court, rules 976(b) and 976.1.)

## COUNSEL

Bram Bevis, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eugene Kaster and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SCOTT, J.**—Appellant, Frank Moya, was convicted by a jury of possession of a sharp instrument by a prisoner, in violation of Penal Code section 4502. Among his contentions on appeal is that he was denied access to information critical to his defense of discriminatory prosecution, in violation of *Murgia*

v. *Municipal Court* (1975) 15 Cal.3d 286 [124 Cal.Rptr. 204, 540 P.2d 44]. We hold that notwithstanding *People* v. *Ochoa* (1985) 165 Cal.App.3d 885 [212 Cal.Rptr. 4], the trial court did not abuse its discretion in denying appellant's discovery request, and affirm the judgment.

I

On March 29, 1983, appellant, who was then an inmate at San Quentin, was observed avoiding a routine search by slipping through a cordon of guards. The officers were frisking several inmates prior to their release into the exercise yard. When questioned, appellant told the supervising officer that he had just been searched. The supervisor searched appellant and found an inmate-made blade in his pocket.

II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . .

IV

■■■■ Appellant contends that the court committed prejudicial error in denying his motion to compel discovery of data relating to his claim of discriminatory prosecution.

Before trial, appellant moved for dismissal and discovery pursuant to *Murgia* v. *Municipal Court, supra,* 15 Cal.3d 286. Appellant, who is Mexican-American, alleged that the Marin County District Attorney files Penal Code section 4502 charges against a disproportionate percentage of minority inmates. Appellant alleged that he would not have been prosecuted but for this discriminatory practice. He sought a multiplicity of investigative records, reports, and other documents including statements of witnesses and suspects, from the administrative staff at San Quentin, the district attorney and the Attorney General, relating to all charged and uncharged weapons possession incidents at San Quentin from January 1, 1982, through March 1984.

The motion was supported by a declaration from Deputy Public Defender Douglas Horngrad, which states in part that according to a Department of Corrections report, as of June 30, 1979, minority inmates comprised 57.6

*See footnote, *ante,* p. 1307.

percent of the felon population at San Quentin.[1] Horngrad also declared that 182 San Quentin inmates were referred to the district attorney's office for possible filing of section 4502 charges in 1982; that the public defender's office participates in most if not all cases originating at San Quentin; and that of the 21 San Quentin defendants represented by that office in 1982 and 1983 for possession of a weapon by a prison inmate, 15 (or about 71 percent) were members of a "racial minority."

In opposition to the motion, the People submitted a statement on information and belief by a district attorney's investigator that the prison population as of October 20, 1983, was 36 percent White, 19 percent Mexican-American, 21 percent Black, and 24 percent "other." In addition, the People submitted a declaration by John Connolly, the deputy district attorney who issued the criminal complaint against appellant. Connolly declared that when he issued the complaint, he neither knew nor took into consideration appellant's race. He issued the complaint solely on the basis of whether it appeared that the violation alleged had been committed, and whether there was a reasonable likelihood the case could be proved beyond a reasonable doubt. Connolly also declared that there was no policy or practice in the district attorney's office to discriminate against any group in the filing of complaints. The People also submitted a declaration by the eight senior deputy district attorneys to whom reports of alleged crimes committed at San Quentin were assigned for review, evaluation, and possible filing of complaints. They declared that in no case did they consider a person's racial background. Their decisions whether to prosecute were based on objective factors such as the available evidence, the nature of the offense, and the defendant's criminal history, if available. They too declared that the office had no policy or practice of discrimination. The trial court denied appellant's motion.

In the course of a criminal proceeding, a defendant may object to maintenance of the prosecution on the ground of deliberate invidious discrimination in the enforcement of the law. (*Murgia* v. *Municipal Court, supra,* 15 Cal.3d at pp. 300, 306.) Traditional discovery principles are applicable so that defendants may be permitted to discover information relevant to such a claim. (*Id.,* at p. 306.)

In *Murgia,* defendants moved for discovery of various documents relating to their discriminatory prosecution claim. The motion was supported by over 100 affidavits detailing numerous incidents of allegedly discriminatory

---

[1]A page of the report was attached to the motion. That report states that of 2,954 inmates, 1,051 were White, 456 were Mexican-American, 1,059 were Black, and 49 were "other." If the category labeled "other" is considered non-White, the racial makeup of the prison was approximately 40 percent White and 60 percent non-White.

conduct by law enforcement officials toward United Farm Workers and their supporters. The People submitted no counteraffidavits or declarations in opposition. The trial court found that defendants' evidence established a prima facie case of discriminatory enforcement, but denied the discovery motion on the ground that the defense was unavailable. (*Id.,* at pp. 291-293.) Accordingly, in *Murgia* the Supreme Court had no occasion to clarify the minimum showing necessary to support a discovery order when discriminatory enforcement is claimed. Later cases have held that a defendant claiming discriminatory enforcement need only make a showing of "plausible justification" for the discovery. (*People* v. *Municipal Court (Street)* (1979) 89 Cal.App.3d 739, 746-749 [153 Cal.Rptr. 69]; *Bortin* v. *Superior Court* (1976) 64 Cal.App.3d 873, 878-879 [135 Cal.Rptr. 30].) Such a showing need not be strong. (*Id.,* at p. 879.)

If a defendant has filed affidavits which demonstrates plausible justification as a matter of law for a discovery order, and if the People have filed no counterffidavits or counterdeclarations, it is an abuse of discretion for the trial court to deny summarily the discovery request. (See generally, *People* v. *Memro* (1985) 38 Cal.3d 658, 675-684, and fn. 19 [214 Cal.Rptr. 832, 700 P.2d 446] [held: trial court abused its discretion in summarily denying discovery request for complaints against certain police officers pursuant to Evid. Code, § 1043 et seq.; court rejects People's argument that defendant failed to show plausible justification or good cause for desired information].) On the other hand, in *Bortin* v. *Superior Court, supra,* 64 Cal.App.3d 873, the court suggested that a defendant's weak or "unweighty" showing of plausible justification may be impeached or otherwise traversed by an evidentiary showing by the People. Under such circumstances, the court stated, a trial court would be within its discretion to conclude that the defendant's efforts fell short of the showing required for discovery. (*Id.,* at pp. 878-880.)

*People* v. *Ochoa, supra,* 165 Cal.App.3d 885 is a case in which the facts are strikingly similar to the facts in this case. In *Ochoa,* two San Quentin inmates who were being prosecuted for possession of a weapon by a prisoner moved for discovery in conjunction with claims of discriminatory law enforcement. The defendants supported their motions with declarations presenting statistical evidence nearly identical to that presented in this case with respect to the prison population in 1979, the number of cases referred from the prison for possible prosecution, and the percentage of minority inmates represented by the public defender's office. As in this case, the prosecuting district attorney filed a declaration denying that he considered race in deciding to issue the complaints. (*Ochoa, supra,* at p. 887.)

The trial court in *Ochoa* ordered production of all referral forms received by the district attorney from prison officials from January 1, 1982, through

November 30, 1983. Those forms specify the inmate's race. The People refused to comply, and the court dismissed the charges against the defendants.

The appellate court held that the trial court did not abuse its discretion in granting the discovery. It characterized defendants' showing as "not strong," but concluded that the statistical disparities provided sufficient justification for the court's discovery order. To the People's argument that the district attorney's declaration negated any showing of plausible justification, the court replied, "The court *could* properly discount the value of this oral declaration denying discriminatory prosecution, when the People had access to stronger evidence in the referral forms. (Evid. Code, § 412.) The mere introduction of evidence that contradicts the defendants' allegations does not *automatically* destroy justification for the discovery order." (*Ochoa, supra,* 165 Cal.App.3d at pp. 888-889, italics added.) In sum, the *Ochoa* court held that it was within the discretion of the trial court to discount the prosecutor's declaration and grant the discovery. The *Ochoa* court did not hold that all trial courts must, as a matter of law, disregard such declarations.

■ In order to set aside a trial court's discovery order, an appellate court must find an abuse of discretion. (*People* v. *Ochoa, supra,* 165 Cal.App.3d 885, 888; see *People* v. *Municipal Court (Street), supra,* 89 Cal.App.3d 739, 742-743, 751; *People* v. *Serna* (1977) 71 Cal.App.3d 229, 235 [139 Cal.Rptr. 426].) The term judicial discretion implies the absence of arbitrary determination, capricious disposition, or whimsical thinking. (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65].) Judicial discretion requires the exercise of discriminating judgment within the bounds of reason. To exercise judicial discretion, a trial court must know and consider all material facts, and all legal principles essential to an informed, intelligent, and just decision. (*In re Cortez* (1971) 6 Cal.3d 78, 85-86 [98 Cal.Rptr. 307, 490 P.2d 819].)

When a reviewing court is considering whether the trial court has abused its discretion, the showing is insufficient if it presents facts which merely afford an opportunity for a difference of opinion. A reviewing court is not authorized to substitute its judgment for that of the trial judge. (*Brown* v. *Newby* (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018].) In other words, discretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered. (See *People* v. *Giminez, supra,* 14 Cal.3d at p. 72.)

■ In this case, as in *Ochoa*, there was information before the trial court that in 1983 the racial makeup of San Quentin was 36 percent White

and 64 percent non-White; that few of the inmates referred to the district attorney's office on weapons charges in 1982 were prosecuted, and that between 69.4 and about 71 percent of the inmates referred by the district attorney's office to the public defender's office on such charges were racial minorities, which presumably means non-Whites. The *Ochoa* court itself characterized this showing as "not strong." (*People* v. *Ochoa, supra,* 165 Cal.App.3d at p. 888.)

In this case, in rebuttal, in addition to the declaration from the district attorney who prosecuted the case, the People presented the declaration of the eight senior deputies who review and evaluate cases involving San Quentin inmates, all denying that race entered into decisions to prosecute. No similar declaration is mentioned by the *Ochoa* court. The trial court in this case did not exceed the bounds of reason when it concluded that appellant's weak showing was refuted by the People's declarations.[2] (See *Bortin* v. *Superior Court, supra,* 64 Cal.App.3d at p. 879.)

V*

. . . . . . . . . . . . . . . . . . . . . . . .

VI

Judgment is affirmed.

Merrill, J., concurred.

**WHITE, P. J.,** Dissenting.—I respectfully dissent.

In 1975, the Supreme Court held in *Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286 [124 Cal.Rptr. 204, 540 P.2d 44], that "[n]either the federal nor the state Constitution countenances the singling out of an invidiously

---

[2]Even if the records in both cases were identical, we would not hold that the trial court in this case abused its discretion in denying the requested discovery. As already stated, while the *Ochoa* court held that the trial court could discount the prosecutor's declaration, it did not hold that the court was *required* to do so. A record presenting facts on which reasonable minds may differ is not a record establishing an abuse of discretion.

The People also urge that *Ochoa* was wrongly decided, and that the defendants' showing in that case was inadequate regardless of the declaration of the prosecutor. We conclude that notwithstanding *Ochoa*, the trial court in this case did not abuse its discretion in denying discovery. Therefore we find it unnecessary to consider the merits of the *Ochoa* court's analysis, although a persuasive argument can be made that the *Ochoa* court's description of defendants' showing in that case did not constitute a "plausible justification" for discovery.

*See footnote, *ante,* page 1307.

selected class for special prosecutorial treatment. . . . If an individual can show that he would not have been prosecuted except for such invidious discrimination against him, a basic constitutional principle has been violated, and such prosecution must collapse upon the sands of prejudice." (*Id.,* at p. 290.) Consequently, the court held that "[d]efendants are entitled . . . to pursue discovery with respect to their claim that in the instant case such prejudice was in fact the moving force behind the pending criminal proceedings." (*Id.,* at p. 291.)

Appellant, who is Mexican-American, contends that he was prosecuted only because of his racial status. In both the municipal and superior courts, appellant requested discovery of certain statistical data in possession of the district attorney's office and the Department of Corrections. In support of his motion, appellant filed a declaration made by his public defender, offering the results of a statistical analysis compiled by the Marin County Public Defender's Office. The data indicate a disproportionate number of referrals of weapon possession cases involve racial minorities, in comparison with the racial makeup of the prison population. In response, the district attorney filed a declaration denying that appellant's race had been considered in the decision to prosecute. Both courts denied the motion, with the superior court judge stating: "I don't feel that the showing here is sufficient to show discriminatory prosecution."

The standard articulated by the Supreme Court in *Murgia* is not that the defendant be able to make a showing of discriminatory prosecution. To the contrary, the court stated: "We emphasize that, in the present proceeding, we are not faced with the question of whether defendant's showing is adequate to rebut the presumption that official duty has been properly, and hence constitutionally, exercised (see Evid. Code, §§ 664, 606; *People* v. *Gray* [1967] 254 Cal.App.2d 256, 265 [63 Cal.Rptr. 211]); the only issue before us is whether discovery on the discriminatory prosecution claim should have been totally foreclosed." (*Murgia* v. *Superior Court, supra,* 15 Cal.3d at p. 305.)

In *Griffin* v. *Municipal Court* (1977) 20 Cal.3d 300 [142 Cal.Rptr. 286, 571 P.2d 997], the Supreme Court clarified this issue. The court stated: "Unlike civil discovery, criminal discovery in California is strictly a judicial creation. In *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 536-537 [113 Cal.Rptr. 897, 522 P.2d 305], we held that in contrast to the formal statutory requirements for civil discovery, 'an accused in a criminal prosecution may compel discovery by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial. [Citations.] The requisite showing may be satisfied by general allegations which establish some cause for discovery other than "a mere desire for the benefit of all

 ██

information which has been obtained by the People in their investigation of the crime.'" [Citations.]

"Applying this reasoning to the defense of discriminatory enforcement, we held in *Murgia* that the defendants' right to discovery should be given effect according to 'traditional principles of criminal discovery.' (*Murgia* v. *Superior Court, supra,* 15 Cal.3d 286, 306.) While at the pretrial stage we are not able to determine what evidence a defendant will ultimately proffer in support of his claim, a motion for discovery 'must nevertheless describe the requested information with at least some degree of specificity and must be sustained by *plausible justification.*'" (*Griffin* v. *Municipal Court, supra,* 20 Cal.3d 300, 306, italics added.)

In the instant case, the declaration provided by appellant's counsel stated that as of June 30, 1979, 57.6 percent of San Quentin inmates were from racial minorities; of those weapons cases referred to the public defender's office from January 1982 to June 1983, 15 of 21 defendants (71.4 percent) were minorities. The data also indicate that the district attorney received 182 referrals from San Quentin for violations of Penal Code section 1982; and the racial makeup of San Quentin inmates was 36 percent White, 21 percent Black, 19 percent Mexican, and 24 percent "other." In my opinion, the information presented to the court was sufficient to meet the plausible justification standard.

Division Five of this court agreed in *People* v. *Ochoa* (1985) 165 Cal.App.3d 885 [212 Cal.Rptr. 4] (petn. for hg. before Cal. Supreme Court den. Apr. 24, 1985). The showing made by appellant was identical to the showing made by the defendants in *Ochoa,* and the factual situation is remarkably similar. In *Ochoa,* two San Quentin inmates, one Black and one Mexican-American, were prosecuted for the same offense, possession of a weapon by a prisoner. Both made motions for discovery to bolster their evidence of discriminatory law enforcement. The defendants supported their motions with declarations by the Chief Public Defender of Marin County, and by a deputy public defender, also from Marin County. The declarations relied upon the *identical statistical data* presented to the court in this case. As in the instant case, the prosecuting attorney filed a declaration denying that race was considered in the issuance of the complaints.

The trial court in *Ochoa* ordered the discovery. When the People refused to comply with the order, the court dismissed the charges against the defendants. The Court of Appeal affirmed the trial court's dismissal, stating in part: "The statistical evidence supporting the defendants' allegations of selective prosecution was not strong. The weakness of their showing, however, was caused largely by the People's control over more reliable evidence.

'Evidence of discriminatory enforcement usually lies buried in the consciences and files of the law enforcement agencies involved and must be ferreted out by the defendant.' (*People* v. *Gray* (1967) 254 Cal.App.2d 256, 266 [63 Cal.Rptr. 211].) In view of the defendants' difficulty in providing a stronger showing of discriminatory enforcement, *the proffered statistical disparities provided sufficient justification for the court's discovery order.*" (*People* v. *Ochoa, supra,* 165 Cal.App.3d at p. 888, italics added.)

In the present case, the majority claim that the abuse of discretion standard applies here, and that a court could, in its broad discretion, properly decide either that the showing is sufficient, or that it is not. I disagree with both assertions.

In *Murgia,* the Supreme Court found that the showing made by the defendant was "clearly sufficient to support a claim of invidious discrimination which is prima facie invalid under the equal protection clause." (*Murgia* v. *Superior Court, supra,* 15 Cal.3d at p. 301.) The court concluded: "In light of the materiality of this defense, traditional principles of criminal discovery mandate that defendants be permitted to discover the information relevant to such a claim. Accordingly, the trial court erred in barring all access to such information in the possession of the prosecution." (*Id.,* at p. 306.) The Supreme Court issued the writ of mandate requested by the appellants, directing the trial court to vacate its order denying discovery and to proceed in accordance with the views expressed in the opinion. (*Ibid.*) The court did not apply the abuse of discretion standard.

In *People* v. *Municipal Court* (*Street*) (1979) 89 Cal.App.3d 739 [153 Cal.Rptr. 69], this court reviewed another "*Murgia*" appeal. We noted at that time that "'The basis for requiring pretrial production of material in the hands of the prosecution is the fundamental principle that an accused is entitled to a fair trial.' (*Cash* v. *Superior Court* (1959) 53 Cal.2d 72, 75 [346 P.2d 407].) Although the California Supreme Court has not yet established a method of ascertaining whether or not discovery of a given item is necessary to accord defendant a fair trial (Louisell & Wally, Modern Cal. Discovery [(2d ed. 1972) § 14.05] at p. 885), underlying the rationale of criminal discovery is the principle first stated in *People* v. *Riser* (1956) 47 Cal.2d 566, 586 [305 P.2d 1] (app. dism. 358 U.S. 646 [3 L.Ed.2d 568, 79 S.Ct. 537], disapproved on other grounds in *People* v. *Morse* (1964) 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810]): 'Absent some governmental requirement that information be kept confidential for the purposes of effective law enforcement, the state has no interest in denying the accused access to all evidence that can throw light on issues in the case, . . .' Justice Traynor wrote: 'There remains to be articulated how much the right [to pretrial discovery] encompasses. The defendant must show better

cause for discovery "than a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime." A showing, however, that the defendant cannot readily obtain the information through his own efforts will ordinarily entitle him to pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, if it appears reasonable that such knowledge will assist him in preparing his defense. Moreover, in the absence of a countervailing showing by the prosecution that the information may be used for an improper purpose, *discovery is available not merely in the discretion of the trial court, but as a matter of right.*' (Traynor, *Ground Lost and Found in Criminal Discovery* (1964) 39 N.Y.U. L.Rev. 228, 244, italics added.)" (*People* v. *Municipal Court (Street), supra,* 89 Cal.App.3d 739, 749-750.)[1]

The Supreme Court opinions involving "*Murgia*" motions have not applied the abuse-of-discretion standard, and noting the fundamental constitutional principles involved—equal protection and the right to a fair trial— I would agree with Justice Traynor, that upon meeting the plausible-justification standard the discovery requested should be available to the appellant as a matter of right, rather than within the discretion of the court. Here, as Justice King held in *Ochoa,* the showing meets this lenient standard.

Moreover, even assuming for the sake of discussion that the abuse-of-discretion standard is applicable, I quarrel with the majority's conclusion that two trial courts given identical facts may properly decide a legal issue and obtain opposite results. The question of law presented is whether the statistical data proffered by appellant met the plausible-justification standard.

Apparently, the Marin County Public Defender's office has compiled statistics indicating that the San Quentin weapons cases are being prosecuted on a racially disproportionate basis. The public defenders are presenting this same showing to different judges, and are receiving different responses. At the hearing on the motion in this case, the public defender so informed the court, stating: "And to make this court current, there have been a few of these motions filed in this court in the last six months. Some judges have granted it, some judges have denied it. [¶] Judge Breiner had ordered some materials be produced, the prosecutor declined to do that, suffered a dismissal. Other judges have declined to order that discovery. But we did seek

---

[1]The majority place great emphasis on the fact that the district attorney's office filed declarations stating that they do not consider race in deciding whether to prosecute. I do not find those declarations persuasive enough to foreclose appellant's rights to pursue his allegation. And I would add that the prosecution did not suggest that the information may be used for an improper purpose.

that discovery in the municipal court before Judge Zunino, and that was denied.''

Situations like this one violate the important goal of uniformity in the law, and encourage judge shopping. Division Five of this court held that the statistical data offered by the public defender's office was sufficient to meet the broad plausible-justification standard; in my opinion, that decision was correct and the trial court judges should be required to adhere to it. I would remand the case and instruct the trial court to order the appropriate discovery.