[Crim. No. 14184. First Dist., Div. Two. Aug. 30, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
RAMON SERRATA, Defendant and Appellant.

**COUNSEL**

Douglas R. Schmidt, under appointment by the Court of Appeal, and Winslow & Schmidt for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and John W. Runde, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

ROUSE, J.—Defendant Ramon Serrata appeals from a judgment convicting him of two counts of theft of trade secrets, in violation of section 499c, subdivision (b), of the Penal Code; and two counts of

acceptance of a bribe by an employee, in violation of section 499c, subdivision (c), of the Penal Code.

The facts have been summarized in great detail by both parties in their briefs; therefore, we shall confine our discussion thereof to those which are necessarily involved in the resolution of the particular issues before us.

Defendant's first contention on appeal is that the trial court abused its discretion in quashing two pretrial subpoenas duces tecum directed to IBM Corporation, the victim of the offenses with which defendant was charged. The investigation leading to defendant's prosecution and conviction was originally commenced by IBM through the use of its own privately retained security agents. By his subpoenas, defendant sought to compel IBM to produce all notes, documents, recordings, reports and statements compiled and collected by the IBM security staff and its agents and employees during the course of their investigation. He sought all documents, formulas and drawings in connection with some 16 different computer devices. Allegedly, the purpose of this information was to enable the defense to establish that the trade secrets which defendant was charged with having stolen were not in fact "secret" and that IBM had not taken reasonable measures to protect their secrecy. The information sought to be obtained by the subpoenas had not been made available to the prosecution.

The determination of whether the trial court committed reversible error in quashing defendant's subpoenas turns upon three questions: (1) Is a defendant in a criminal action entitled to exercise discovery rights against a nonparty to the action for the purpose of obtaining information not in the possession of the prosecution? (2) Did defendant identify the documents sought by his subpoenas with adequate specificity to preclude the possibility that he was merely engaging in a "fishing expedition"? (3) Has defendant demonstrated any reasonable probability that his inability to obtain the information sought by the subpoenas was prejudicial to him?

The question of whether or not the defendant in a criminal action is entitled to discovery rights against a nonparty was dealt with at length in the recent case of *Pacific Lighting Leasing Co.* v. *Superior Court* (1976) 60 Cal.App.3d 552 [131 Cal.Rptr. 559], which was decided subsequent to the filing of the briefs in the instant case. The court in the *Pacific Lighting* case reviewed all of the pertinent law on the subject in question,

including *Yannacone* v. *Municipal Court* (1963) 222 Cal.App.2d 72 [34 Cal.Rptr. 838], and *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305], which are relied upon herein, and concluded that a private nonparty witness is subject to subpoena duces tecum in a criminal action where the defendant has made a sufficient showing that the documents which he seeks to inspect will assist him in preparing his defense. ■■ We adopt the reasoning of the *Pacific Lighting* case and hold that, in this instance, the trial court was not entitled to quash defendant's subpoenas duces tecum solely on the ground that IBM was not a party to the action.

It is apparent, however, that the trial court was correct in quashing defendant's subpoenas on the basis that they involved such a broad, blanket demand for documents that defendant's conduct amounted to nothing more than a fishing expedition. At the hearing on the first motion to quash, counsel for IBM pointed out that defendant's subpoena called for the production of "literally millions of pieces of paper" which were located at IBM plants throughout the world and which constituted the work product of numerous teams of experts and scientists who had devoted as much as four or five years to the development of the sixteen complex computer devices which were the subject of the subpoenas. Thus, we conclude that the blanket nature of the subpoenas furnished an entirely valid basis for quashing them. (*Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 167 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]; *People* v. *Terry* (1962) 57 Cal.2d 538, 561 [21 Cal.Rptr. 185, 370 P.2d 985].)

Finally, defendant has failed to establish that he was prejudiced by the quashing of the subpoenas. In fact, the trial court did authorize extensive defense discovery of IBM documents and other materials in the possession of the prosecution. Since defendant does not contend that he was denied access to any of the evidence in the possession of the prosecution, it is apparent that he had ample evidentiary material upon which to base a viable defense.

■■ Defendant contends that the trial court abused its discretion in denying defense counsel's request for a continuance in order to prepare for trial. The record reveals that, following certain initial continuances, the trial date was set for November 12, 1974. On said date, defendant moved for a continuance in order that defense counsel could tabulate various documents received from IBM. The court denied the motion.

However, on the following day, November 13, the court continued the case until November 18, 1974. On that date, defense counsel sought a further continuance.

The trial court denied the request for a continuance, and selection of the jury commenced on November 18.

Section 1050 of the Penal Code provides, in pertinent part, that "No continuance of a criminal trial shall be granted except upon affirmative proof in open court . . . that the ends of justice require a continuance." It is settled that continuances are matters peculiarly within the discretion of the trial court (*People* v. *Johnson* (1970) 5 Cal.App.3d 851, 859 [85 Cal.Rptr. 485]) and that such court's determination as to whether a defendant has affirmatively demonstrated that justice requires a continuance will not be disturbed on appeal in the absence of a clear abuse of discretion. (*People* v. *Bethea* (1971) 18 Cal.App.3d 930, 936-937 [96 Cal.Rptr. 229].)

In this instance, the record fails to demonstrate any such abuse of discretion. The sole basis for the November 18 continuance motion was that defense counsel felt that he needed additional time to examine and analyze a large quantity of documentary material which IBM had elected to make available to the defense. However, at the November 18 hearing, defense counsel admitted that he had already devoted all of November 12 and 13, most of November 14 and all of November 15 through 17 analyzing and cataloguing the various documents in defendant's office at IBM. Fifteen days elapsed between the denial of the continuance and cross-examination of the first expert witness who testified concerning the drawings allegedly stolen by defendant, and another week elapsed prior to the commencement of the case for the defense. Thus it appears that defense counsel had ample opportunity to analyze all of the documents furnished and to be furnished by IBM before the trial had reached a point where such evidence could be developed by the defense. Under the circumstances here present, the denial of the defense request for a continuance cannot be deemed an abuse of discretion.

Defendant next contends that his representation by the public defender's office created a conflict of interest which requires a reversal of the judgment of conviction. He argues that the public defender should not have been allowed to represent him at the trial because there were two areas of potential conflict of interest: (1) the temporary defection to

IBM of Mr. Schroeder, the public defender's investigator; and (2) the acceptance by Mr. Jinkerson, the public defender who represented defendant in certain pretrial proceedings, of employment with an attorney representing a codefendant. Defendant relies upon *Uhl* v. *Municipal Court* (1974) 37 Cal.App.3d 526 [112 Cal.Rptr. 478], as authority for the proposition that once a court is advised of defense counsel's good faith belief that a conflict of interest exists, the court must forthwith appoint other counsel to represent the defendant and may not inquire. into the facts creating the conflict. Defendant takes the position that once the public defender brought the Schroeder-IBM situation to the court's attention and expressed the opinion that there was a potential conflict, the court should immediately have appointed other counsel for defendant and should not have held an evidentiary hearing to investigate the existence of such conflict. Defendant further asserts that, because the complaining witness, IBM, was a party to Schroeder's "breach of ethics," the appointment of other counsel would probably not have cured the violation of defendant's rights, since "We can only speculate as to the information received by the victim from S[c]hroeder."

Defendant's reliance upon the *Uhl* case is misplaced. In that case, the public defender advised the trial court that he could not represent Uhl because there was a conflict of interest between Uhl and another client whom the public defender was representing. The public defender advised the trial court that he could not disclose the nature of the relationship creating the conflict without breaching the confidence of the other client. This court held that under those particular circumstances, the trial court should have accepted the attorney's assurance that the conflict existed even though there could be no showing of the particular facts giving rise to the conflict.

The situation in this case is totally dissimilar. Here, the public defender never displayed the least reluctance to inform the court of the precise nature of the facts which he felt had created a potential conflict. The need for a full evidentiary hearing was apparent, since, at the outset, the Schroeder-IBM employment negotiations appeared to have created the real possibility that defendant's due process rights had been so severely compromised by Schroeder's revelations to IBM that defendant could not receive a fair trial, regardless of which attorney represented him. Obviously, all of the parties were aware of the need for the evidentiary hearing, and none of them objected to its being held. At the conclusion of the hearing, it was uniformly agreed by all, including

defendant's attorney, Mr. Ruiz, that defendant's due process rights had not been violated, since all of the testimony established that Schroeder had sought the employment with IBM but that IBM apparently rejected his application because of his work on the Serrata case; that at no time had Schroeder discussed the results of his investigation into the Serrata case with any representative of IBM. Arguments were then held on the question of whether the public defender's office should represent defendant at the trial, and only one area of potential conflict was raised, namely, the fact that the public defender's office felt that it could not effectively raise as a defense IBM's allegedly wrongful conduct in offering employment to Schroeder. When the court ruled that such evidence was irrelevant to the issues in the case and hence inadmissible, the public defender's office agreed that there was no other potential conflict of interest.

Defendant has made no attempt on appeal to challenge the court's ruling relative to the inadmissibility at the trial of evidence designed to depict IBM as a wrongdoer. Instead, he argues only that the public defender's office should not have been allowed to represent him because Schroeder's conduct had compromised the public defender's office and given IBM access to confidential information gained in Schroeder's investigation. However, all of the testimony given at the lengthy evidentiary hearing held by the trial court established that IBM was never given access to any such information. Defendant's counsel, Mr. Ruiz, agreed that this was the case, and the trial court so found. Hence, this ground for arguing that the public defender should not have been permitted to represent defendant at the trial is untenable.

Defendant also complains that Mr. Jinkerson, the public defender who represented him during certain pretrial proceedings, accepted employment with counsel for a codefendant. However, he has failed to explain why he was in any way prejudiced by this occurrence. In fact, it is apparent that he was not. Defendant was not tried with any codefendant, and he was not represented at his trial by Mr. Jinkerson, but by another member of the public defender's staff. Defendant himself had expressed the view that Mr. Jinkerson had done an excellent job of representing him during the pretrial proceedings. Under the circumstances, we conclude that the trial court properly allowed the public defender to represent defendant at his trial.

■ Defendant next contends that section 499c of the Penal Code, which makes it a crime to wrongfully copy or take a "trade secret," is in

conflict with the federal patent laws. He points out that section 499c, subdivision (a), provides in pertinent part that "(3) 'Trade secret' means the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula or improvement which is secret and is not generally available to the public and which gives one who uses it an advantage over competitors who do not know of or use the trade secret; and a trade secret shall be presumed to be secret when the owner thereof takes measures to prevent it from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." Defendant argues that the thrust of the statute is to give the possessor of a nonpatented "technical development" the exclusive right to use it and that since the statute establishes no time limitations, it effectively creates a monopoly in perpetuity. He asserts that the federal patent laws afford protection which is reasonably limited both in scope and in time, since they apply only to articles possessing the level of invention required for federal patents and protect the exclusive use of such articles only for a specified number of years. Defendant argues that section 499c of the Penal Code is much broader and more restrictive in scope and that it is, therefore, unconstitutional under the supremacy clause of the federal Constitution, as being in conflict with the federal patent laws. (35 U.S.C. § 1 et seq.)

The basic flaw in defendant's argument is that section 499c of the Penal Code does not prohibit competitors who *honestly* gain access to trade secrets from exploiting them commercially. Thus, subdivision (b) of the statute limits its application to situations where an article representing a trade secret is stolen or taken away, is fraudulently appropriated by the individual to whom it is entrusted or is copied by a person having unlawfully gained access to the article or having gained access to the article through a relationship of trust and confidence which he then violates. The statute is totally dissimilar from the federal patent laws. Its obvious intent is to protect trade secrets from appropriation by wrongful, dishonest methods.

In *Kewanee Oil Co.* v. *Bicron Corp.* (1974) 416 U.S. 470 [40 L.Ed.2d 315, 94 S.Ct. 1879], a case cited by defendant, the United States Supreme Court held that Ohio's trade secret law was not void under the supremacy clause as in conflict with the federal patent laws. The court then noted that trade secret laws were designed to accomplish an entirely different purpose than federal patent laws and that trade secret laws afforded protection only against disclosure or use, not with the owner's

consent, but by some improper means. (Pp. 475-476 [40 L.Ed.2d pp. 322-323].) The reasoning of the *Kewanee* case is clearly dispositive of defendant's argument; accordingly, we conclude that the California trade secret law, like the Ohio law, is not unconstitutional under the supremacy clause.

Defendant complains that he was deprived of a fair trial as a result of various instances of prosecutorial misconduct.

He asserts that the prosecution withheld certain information which would have been valuable to his defense. However, it is apparent from the record that there was a thorough inquiry into this matter and that there is no merit to defendant's claim. The record shows that Steckel, a witness for the prosecution, apparently approached the prosecutor and the trial court at approximately the same time and advised them of his theory that IBM was aware of the thefts and had permitted them to continue. However, it developed that Steckel's theory was not based upon facts within his personal knowledge; thus he was unable to give testimony on the subject which would be of benefit to the defense. Furthermore, the Powers-IBM agreement to which Steckel alluded was ultimately determined by the trial court to be irrelevant to the issues in the case.

Defendant complains that, when the case was presented to the grand jury, certain drawings which allegedly had been stolen from IBM were presented together with certain drawings which had not been stolen and which had been used as "props" in the investigation. He contends that the drawings were not separately labeled or otherwise identified.

This argument is difficult to understand. Defendant does not contend that as a result of the failure to separately identify the drawings, the grand jury lacked probable cause to indict him. There was no ambiguity as to the identification of the drawings at the trial, nor is there anything to suggest that the prosecutor intentionally failed to separately identify the documents at the grand jury hearing. The record shows that it was the police department which had packaged them together prior to the grand jury hearing. We find no merit in this complaint.

■ Defendant complains of the fact that the prosecutor was responsible for removing a particular exhibit from the jury's consideration. The record shows that after the jurors had commenced their deliberations,

they asked to have all of the exhibits sent to them. After the jurors had resumed their deliberations, the prosecutor discovered that he had inadvertently retained possession of one documentary exhibit, and he so advised the court. The jury then announced that it had reached a verdict. Defense counsel moved for a mistrial, but the court denied the motion, stating that it was sure that the prosecutor had acted inadvertently and that in any event, it was convinced that the particular exhibit could have had no material effect upon the jury's verdict.

The trial court's determination in this regard was proper. The exhibit in question was one introduced by the People. It consisted of a calendar which had been kept by Steckel and which tended to corroborate Steckel's testimony as to the date of a meeting with defendant.

Defendant's final claim of misconduct by the prosecutor is based upon a remark made by the latter during his closing argument to the jury. He contends that the remark constituted an attempt to "ingratiate IBM with the jury without basis."

It is apparent from the record that the remark was innocuous in nature, that it was made in response to defense counsel's argument (which is not a part of the record on appeal), and that it became apparent through the subsequent remarks made by both counsel that the prosecutor was merely alluding to the fact that IBM had been cooperative in making various records available to the defense. The remark was neither improper nor prejudicial. Further, since defense counsel failed to request an admonition to the jury, defendant is precluded from raising the point on appeal. (*People* v. *Wong* (1973) 35 Cal.App.3d 812, 833 [111 Cal.Rptr. 314].)

Defendant's next contention on appeal is that his conviction of violating section 499c of the Penal Code must be reversed because that statute is unconstitutionally vague. Defendant relies upon the rule that a penal statute is violative of the due process clause if it forbids the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. (*People* v. *Barksdale* (1972) 8 Cal.3d 320, 327 [105 Cal.Rptr. 1, 503 P.2d 257]; *People* v. *Belous* (1969) 71 Cal.2d 954, 960 [80 Cal.Rptr. 354, 458 P.2d 194].) He contends that section 499c is unconstitutionally vague in the following respects: (1) subdivision (a)(3), of the statute defines "trade secret" as an item (of various enumerated types) which gives one who uses it "an

advantage over competitors"; (2) subdivision (a)(3) of the statute also provides that a trade secret shall be "presumed" to be secret when the owner thereof takes "measures" to prevent it from becoming available to persons other than those selected by the owner to have access thereto for limited purposes; and (3) the statute "under certain circumstances" (unspecified by defendant) permits a person to make a copy of a trade secret available to a third party, but makes it unlawful for him to do so if he accepts a "benefit" in return.

Before analyzing these arguments on their merits, we must point out that the real question before us is whether the statute was unconstitutionally vague *as applied to the defendant.* ■ The governing principles are well enumerated in the recent case of *People* v. *Rodriquez* (1975) 50 Cal.App.3d 389, 399 [123 Cal.Rptr. 185]: "Reasonable certainty is all that is required of a statute. [Citations.] We are unconcerned that the statute may be difficult to apply. A difficult standard does not make a statute unconstitutionally vague. [Citation.] '[S]tatutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.' (*United States* v. *National Dairy Corp.*, 372 U.S. 29, 32 [9 L.Ed.2d 561, 565, 83 S.Ct. 594]; see also *People* v. *Seale, supra,* 274 Cal.App.2d at p. 115 [78 Cal.Rptr. 811].) ■ [¶] Moreover, except when First Amendment interests are involved [citation], the constitutional certainty of a statute is not determined by reference to hypothetical facts. [Citation.] 'If *an accused* can reasonably understand by the terms of the statute that his conduct is prohibited, the statute is not vague. [Citation.] In determining the sufficiency of the notice, a statute must of necessity be examined in the light of the conduct with which the defendant is charged. [Citation.]' (*People* v. *Anderson,* 29 Cal.App.3d 551, 561 [105 Cal.Rptr. 664].) (Italics added.)"

■ In light of these principles, we consider defendant's contention that section 499c is unconstitutionally vague because it defines a trade secret as information which gives one using it "an advantage over competitors." Defendant suggests only that he regards the quoted phrase as vague because the question of whether or not information provides an advantage to a recipient is "highly subjective and involves a question of business practice." We cannot agree. The phrase "advantage *over competitors*" refers to any form of commercial advantage. It would be unreasonable to require the Legislature to specify every form such advantage might take. In fact, the phrase "advantage over competitors"

was included in the definition of the phrase "trade secret" adopted by section 757, comment b, of the Restatement of Torts.

. ■ Defendant raises a two-pronged objection to that portion of section 499c which creates a presumption that information is secret if the owner takes measures to protect it. He argues that the word "measures" is unduly vague. He also contends that the presumption created by the statute is unconstitutional because it is arbitrary and because it relieves the prosecution of its burden of proving every element of the crime beyond a reasonable doubt.

We find no merit to defendant's contention that the word "measures" is vague. We believe that the term "measures to prevent [trade secrets from becoming available to unauthorized persons]" is devoid of ambiguity and readily understandable to one of ordinary intelligence. Further, in this instance there was no question of the fact that IBM had taken numerous measures to protect its trade secrets, e.g., stamping all secret drawings "IBM Confidential," continually spot auditing the files of random employees for the unauthorized possession of documents, requiring countersignatures when documents were checked out and installing special magnetic locks on "high security" buildings such as the building where defendant had worked.

The case of *People* v. *Lachman* (1972) 23 Cal.App.3d 1094, 1097 [100 Cal.Rptr. 710], provides direct and conclusive answers to defendant's arguments regarding the alleged unconstitutionality of the presumption that information is secret if an owner takes measures to protect it from becoming available to unauthorized persons. In *Lachman,* the court held that a statutory presumption affecting the burden of proof in a criminal trial did not alter the People's duty to prove the defendant's guilt beyond a reasonable doubt. The court also held that the use of a statutory presumption in a criminal case was not violative of the due process clause if it could be said, with substantial assurance, that the presumed fact was more likely than not to flow from the proved fact on which it was made to depend. We deem it evident that, when security measures are taken to protect information from becoming available to unauthorized persons, it is more likely than not that such information is secret and intended by the owner to remain so.

Defendant's final ground for claiming that section 499c is unconstitutionally vague is not clearly articulated. He suggests, as noted above, that

"under certain circumstances," the statute permits a person to make a copy of a trade secret available to a third party, but makes it unlawful for him to do so if he receives a benefit in return. However, defendant has failed to specify the "circumstances" to which he alludes, and a reading of the statute itself furnishes no clue as to the nature of the circumstances envisioned by defendant. In any event, we need not concern ourselves with hypothetical situations, since under the rule stated in *People* v. *Rodriquez, supra,* at p. 399, the question before us is whether *defendant* could reasonably understand by the terms of section 499c that the conduct in which *he* engaged was prohibited. This question can only be answered in the affirmative.

Defendant contends that his conviction must be reversed because section 499c of the Penal Code was selectively and discriminatorily enforced against him. He bases this argument upon the fact that there are no cases cited in the annotations to the statute, although it was enacted in 1967, and upon the additional fact that the testimony at the trial established that many thefts of IBM trade secrets had occurred prior to the thefts for which he was prosecuted and convicted.

This argument is untenable and borders on the frivolous. ■ The selective enforcement of a penal statute is not a denial of equal protection of the laws unless the selection was deliberately based upon an unjustifiable standard such as race, religion or some other arbitrary classification. (*Oyler* v. *Boles* (1962) 368 U.S. 448, 456 [7 L.Ed.2d 446, 452-453, 82 S.Ct. 501]; *Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286, 299-300 [124 Cal.Rptr. 204, 540 P.2d 44].)

The record is devoid of any evidence that the law enforcement authorities (or IBM for that matter) singled defendant out for prosecution based upon any such unjustifiable standard. The record in this case dramatically suggests the reason why it may be true that section 499c is a statute which has rarely been enforced. Defendant's prosecution and conviction were the result of an extremely difficult, complicated and expensive investigation instigated by IBM. It is apparent why a private company such as IBM would engage in such an undertaking only rarely and only where, as here, the value of the stolen trade secrets was extremely great. The legal problems involved in prosecuting such an

action are also apparent. The record on appeal itself contains thousands of pages of transcript.

We conclude that defendant has failed to demonstrate that the enforcement of the provisions of section 499c of the Penal Code against him was the result of discrimination and thus was violative of the equal protection clause.

Defendant's final contention on appeal is that the jury was not fully and fairly instructed because the trial court declined to give four instructions requested by the defense.

 The first such instruction was on the defense of consent. However, defendant has failed to specify the evidence which would have justified the giving of this instruction. The trial court properly refused the instruction because the evidence established as a matter of law that IBM did not consent to the thefts.

Defendant next complains of the trial court's failure to instruct that Steckel was an accomplice as a matter of law. However, the record reveals that the court in fact did so instruct.

Defendant contends that the trial court erred in refusing to give instructions on the defense of the statute of limitations, but here again, the record reveals that the court did so instruct.

 Finally, defendant complains of the court's refusal to instruct on the defense of entrapment based upon the evidence that one Bourget, who was in the employ of IBM, had induced defendant to commit thefts in 1973. However, it suffices to point out that two of the counts of which defendant was convicted charged him with violating section 499c of the Penal Code *prior to November 1972.* It is thus evident that when defendant engaged in the identical conduct in 1973, he was doing so pursuant to his own preexisting intent to steal trade secrets and was not entrapped into such conduct by Bourget. In any event, since Bourget was not a law enforcement officer, but only a private citizen in the employ of IBM, the defense of entrapment was inapplicable. The 1973 thefts were well under way before the public authorities were called in by IBM in

order to apprehend the thieves. We conclude that the trial court properly refused to instruct on the defense of entrapment.

The judgment of conviction is affirmed.

Taylor, P. J., and Kane, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 24, 1976.