[No. D005276. Fourth Dist., Div. One. Dec. 10, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD ELLIS MARSHALL, Defendant and Appellant.

COUNSEL

Robert A. Garcia, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Janelle B. Davis, M. Howard Wayne and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

TODD, J.—Richard Marshall appeals from a judgment of conviction entered on his plea of guilty to one count of battery with serious bodily harm (Pen. Code,[1] § 243, subd. (d)). He contends that improper sentencing criteria were considered when the upper term was imposed against him.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

Marshall further contends that the attorney who represented him at sentencing hearings for the section 243, subdivision (d) conviction and for violation of probation acted under a conflict of interest—rendering Marshall's counsel ineffective. For the reasons set forth below, we conclude the sentences imposed against Marshall should be affirmed.

## FACTS

On January 14, 1986, Earnest Marshall (defendant's 81-year-old father) had a fight with his girlfriend. The girlfriend went next door to request assistance. Mr. Ralph Brinker, an acquaintance of the neighbor, escorted the woman to her car. Earnest Marshall confronted Brinker, accused him of making a pass at his girlfriend and struck him three times in the jaw. Brinker responded by striking defendant's father.

When defendant arrived at his father's apartment, Earnest described his altercation with Brinker. Defendant sought out and confronted Brinker—accusing him of enjoying hitting an old man.

Defendant then threatened Brinker with physical violence, ignoring Brinker's attempt to explain what happened, and then punched Brinker in the mouth. When Brinker bent over, Marshall kicked him in the mouth with steel-toed boots. Brinker fell to his knees. Defendant kicked Brinker at least five more times. As a result of the beating, Brinker suffered a concussion, fractured wrist, broken nose, five broken teeth and other related injuries.

Marshall pled guilty to one count of battery with serious bodily injury and was sentenced to the upper term. Marshall received a midterm sentence for violation of probation on a previous arson conviction, to be served concurrently with the battery charge.

## DISCUSSION

### I

 Marshall asserts his representation at the change of plea and sentencing hearing was rendered ineffective because of a conflict of interest. The basis of this claim is that before the sentencing hearing Marshall's counsel accepted an offer of employment from the district attorney's office.

Marshall's attorney, W. Allan Williams, notified the judge, in open court and in the presence of the defendant, of his prospective change of employment. At the time of Williams's notification, Marshall was represented by

another attorney in the probation revocation matter. This attorney took no exception to Mr. Williams's appointment as attorney for the entire case.[2] Williams's obligation as counsel to Marshall terminated prior to commencement of employment with the district attorney's office. ■ Under federal constitutional law a conflict of interest, in order to render counsel ineffective, must be actual. (*In re Darr* (1983) 143 Cal.App.3d 500, 511 [191 Cal.Rptr. 882]; and see *People* v. *Tallagua* (1985) 174 Cal.App.3d 145, 149-150 [219 Cal.Rptr. 754].) However, the possibility of a conflict of interest, when made known to the trial court, requires inquiry to insure a criminal defendant has not been deprived of effective assistance of counsel. (*In re Darr, supra,* 143 Cal.App.3d 500, 514-515.)

■ Here, Marshall asserts an actual conflict arose when defense counsel accepted future employment with the district attorney. Marshall cites no authority for this proposition and we find no published case holding such circumstance, without more, requires the finding of an actual conflict. Marshall relies upon *People* v. *Mroczko* (1983) 35 Cal.3d 86 [197 Cal.Rptr. 52, 672 P.2d 835], as creating an absolute duty on the trial court to obtain an intelligent and voluntary waiver of the conflict of interest before proceeding with the plea and later sentencing hearings. In *Mroczko,* the problem involved one defense attorney representing multiple defendants. ■ Our Supreme Court stated: "Multiple representation of criminal defendants is not per se violative of constitutional guarantees of effective assistance of counsel. (*Cuyler* v. *Sullivan* (1980) 446 U.S. 335, 348 . . . *People* v. *Chacon* (1968) 69 Cal.2d 765, 773-774 . . . ." (*Id.* at p. 103.) Further, the Supreme Court, after reviewing the *Cuyler* federal rules, states:

"We [California] have applied a somewhat more rigorous standard of review. . . . [W]e have held—regardless of whether there was an objection [at trial]—that even a potential conflict may require reversal *if the record supports 'an informed speculation' that appellant's right to effective representation was prejudicially affected*." (*Id.* at pp. 104-105, italics added.) ■ Thus, we see the existence of even a potential conflict of interest must be

---

[2] "Mr. Newton: May I suggest, your Honor, Mr. Williams take the revocation case now to avoid duplication?

"The Court: Any objection? Mr. Williams?

"Mr. Williams: There—no, not really. There could be a problem, I think the Court's well aware of, in that we're scheduled for the 19th of September. After the 23rd of September I'll no longer be part of Defenders Office.

"Mr. Newton: Well, that timing works out just fine. On the 19th he appears on this case. On the 23 he changes professions.

"Mr. Williams: I have no objection.

"The Court: You're going to be a full-time pilot?

"Mr. Williams: I'm going to be a D.A.

"The Court: Mr. Williams is the only attorney I ever knew that had to make a court appearance and then he flew off in a jet carrier and landed at Miramar. Okay."

accompanied by some evidence of ineffective representation before reversal is required. Marshall has directed us to no instance of actual ineffective representation by trial counsel. Rather, he makes a quantum leap from the prospective employment status to a conclusion of ineffective representation with no supporting facts to demonstrate evidence of such constitutional error.

We have searched the records of the change of plea and sentencing hearing and find Marshall's contention without evidentiary foundation. When the guilty plea and revocation admission were taken, Marshall was carefully advised he faced a maximum of six years confinement in prison. At the later sentencing hearing, although the prosecutor argued at length for a six-year prison commitment, defense counsel succeeded in persuading the trial court to give only a four-year term. Marshall also received the benefit of the previously negotiated bargain so that the sentence for arson on the probation revocation case was ordered to run concurrently with the battery term. Nothing in this record suggests ineffective representation. Therefore, we cannot find " . . . 'that the nature of the defense afforded deprived the defendant of a constitutional right.' " (*People* v. *Mroczko, supra,* 35 Cal.3d 85, 105, quoting *People* v. *Keesee* (1967) 250 Cal.App.2d 794, 798 [58 Cal.Rptr. 780].) Any theoretical conflict of interest based upon future employment is dispelled.

In the absence of California precedent, we have reviewed the law outside this state. *People* v. *LaPine* (1975) 61 Mich.App. 345 [232 N.W.2d 401], provides support for our decision. While LaPine's attorney was defending him on serious sex crime charges, the attorney was acting, under special appointment, as assistant prosecuting attorney in Chippewa County, Michigan, the site of LaPines's criminal prosecution. LaPine was specifically informed of this fact and he made no objection. The attorney's acts as a prosecutor had nothing to do with the sex crime case. Michigan law stated, " 'It shall be unlawful for any prosecuting attorney of this state to defend . . . any person charged with crime within the county of which he is prosecuting attorney.' " (*Id.* at p. 402.) While finding a violation of that rule in LaPine's case, the Court of Appeal of Michigan affirmed the conviction and sentence, stating, "However, we do not believe that violation of the statute should inure to the benefit of the defendant where no prejudice has been shown." (*Ibid.*) Though suggesting this circumstance should be avoided, the court ". . . [saw] no reason to reverse defendant's conviction where he has not been prejudiced." (*Id.* at p. 403.)

We conclude that potential or actual conflict of interest, arising when criminal defense counsel has agreed to future employment as a prosecutor, does not taint a defendant's conviction where no actual prejudice is

demonstrated. Our analysis here shows clearly no actual prejudice resulted from the claimed conflict of interest.

II

Pursuant to California Rules of Court, rule[3] 439(b), a trial court is justified in selecting the upper term of punishment if it determines that "circumstances in aggravation are established by a preponderance of the evidence and outweigh circumstances in mitigation." Here, the trial court imposed the upper term, offering the following justification: "[I]t appears to the Court that because there was great violence involved, because of his newly-acquired conviction, because of the fact that he was on probation and because he's obviously failed on probation, about the only mitigating factor I can see here is that it was a passionate crime based on the the [*sic*] fact that an elderly man was beaten up by a younger man, and the fact he pled guilty, but it appears to the court on balance, that an upper term is required. The term would be four years."

Defendant contends the first two circumstances in aggravation cited by the court were improperly considered in making the sentencing determination.

Great violence, pursuant to rule 421(a)(1), may be considered a circumstance in aggravation. However, it is improper to consider one of the delineated rule 421 factors if that particular circumstance is an element of the crime charged. (Rule 441; see also *People* v. *Harvey* (1984) 163 Cal.App.3d 90, 116-117 [208 Cal.Rptr. 910]; *People* v. *La Fargue* (1983) 147 Cal.App.3d 878, 889 [195 Cal.Rptr. 438].) ■ Defendant asserts, because great violence is an element of the crime of battery with serious bodily injury, the court improperly considered it as a circumstance in aggravation.

Battery with serious bodily injury is codified in section 243, subdivision (d). Serious bodily injury is defined in section 243, subdivision (e)(5) as: "[A] serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement."

This definition of serious bodily injury focuses entirely upon the effect of the battery, not the manner in which the battery was inflicted. There is absolutely nothing in the statute to suggest that a requisite level of violence is necessary to commit this crime. Defendant cites no authority in support

---

[3] All rule references are to California Rules of Court unless otherwise specified.

of his argument that great violence is an element of battery with serious bodily injury. The statutory definition belies the unsupported assertion of Marshall that great violence is an element of the crime.

Our conclusion finds persuasive support in *People* v. *Reed* (1984) 157 Cal.App.3d 489, 492 [203 Cal.Rptr. 659], where the court held a defendant was properly sentenced to the upper term for committing mayhem in a vicious manner. Defendant claimed that, because viciousness is an element of mayhem, it was improper for the court to consider viciousness when sentencing her to the upper term. The court rejected this argument because the statutory definition does not specifically cite viciousness as an element of the crime. (See also *People* v. *Dixie* (1979) 98 Cal.App.3d 852, 856 [159 Cal.Rptr. 717].) Further, the *Reed* court felt the language of the statute permits no inference that viciousness is necessary to commit mayhem.

In addition, a conclusion that great violence is an element of this crime is not logically sound. The statute makes it clear that one commits this crime by inflicting harm of a certain type, serious bodily injury. There is no doubt that serious bodily injury is quite often precipitated by great violence. It is not, however, necessarily true that an act which results in serious bodily injury must occur as a result of great violence. Marshall asks us to limit the use of section 243, subdivision (d) to only those situations where a victim suffers serious bodily injury *as a result of great violence*—ignoring the fact that moderate, and even innocuous, acts may lead to serious bodily injury. We conclude that by defining the crime solely in terms of the injury inflicted, the Legislature intended to include all batteries which result in serious bodily harm, regardless whether inflicted with great violence, within the reach of this statute.

It was proper for the court to consider great violence as a circumstance in aggravation when sentencing Marshall to the upper term for battery with serious bodily injury.

■ Marshall further asserts that the battery was not, in fact, performed with great violence. Testimony at the preliminary hearing shows Marshall repeatedly kicked an injured Brinker with steel-toed boots. This testimony is substantial evidence the battery was performed with great violence. There is no error in the use of great violence as a circumstance in aggravation.

### III

■ The second aggravating factor cited by the trial court was Marshall's "newly acquired conviction." As this factor is not specifically mentioned in rule 421, there is some ambiguity concerning its exact meaning.

Marshall contends the trial court erroneously considered the battery with serious bodily harm conviction as a circumstance in aggravation. We do not find this meaning in the trial court's statement.

Rule 421(b)(2) allows a sentencing court to consider the criminal record of a defendant if that record denotes numerous convictions or a pattern of convictions increasing in seriousness. The People argue the trial court was referring to rule 421(b)(2) when "newly acquired conviction" was cited as a circumstance in aggravation. The probation report considered by the trial court cites a history of prior convictions. Furthermore, rule 421(b)(2) is cited as a possible circumstance in aggravation in the probation report. The record affirmatively reflects the trial judge read and considered this report.

There is striking conformity between the circumstances in aggravation listed in the probation report and those cited by the trial court. The probation report listed, in order, the following circumstances in aggravation: 1. great violence; 2. rule 421(b)(2); 3. defendant on probation; and 4. defendant's prior performance on probation unsatisfactory. The circumstances listed by the trial court, in order, were: 1. great violence; 2. defendant's newly acquired conviction; 3. defendant on probation; and 4. defendant's prior performance on probation unsatisfactory. The trial court properly used the probation report in making its sentencing determination. We construe the reference "newly acquired conviction" is a citation to rule 421(b)(2). Accordingly, the trial court properly considered rule 421(b)(2) as a circumstance in aggravation.

In reaching this conclusion, we are cognizant of *People* v. *Turner* (1978) 87 Cal.App.3d 244 [150 Cal.Rptr. 807], and its progeny. We have not construed the trial court's use of the probation report in a way which amounts to a violation of section 1170, subdivision (c). (*People* v. *Ramos* (1980) 106 Cal.App.3d 591, 600 [165 Cal.Rptr. 179].) The court simply utilized the probation report, in conjunction with other relevant evidence, in making its independent sentencing determination.

Assuming, arguendo, any error in the court's statement, this error is harmless. The other rules cited by the court (rules 421(a)(1), 421(b)(4), 421(b)(5)) amply support the trial court's conclusion that aggravating circumstances outweighed any mitigating circumstances. (*People* v. *Dozier* (1979) 90 Cal.App.3d 174, 179 [153 Cal.Rptr. 53].) Regardless of Marshall's "newly acquired conviction," the upper term was fully justified here.

## DISPOSITION

Judgment affirmed.

Kremer, P. J., and Benke, J., concurred.