Filed 2/23/24  P. v. Lopez-Ortuno CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JORGE LOPEZ-ORTUNO,<br><br>Defendant and Appellant. | F084970<br><br>(Super. Ct. No. F22903510)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Jr., Judge.

Laura P. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant and appellant Jorge Lopez-Ortuno was charged with the premeditated attempted murder of Elizabeth G. (Pen. Code,[1] §§ 187, subd. (a), 664 [count 1]); willful infliction of corporal injury to Elizabeth, the mother of his child, a former cohabitant, and/or someone with whom he previously had a dating relationship (§ 273.5, subd. (a) [count 2]); assault with a firearm upon Elizabeth (§ 245, subd. (a)(2) [count 3]); assault with a firearm upon V.G. (§ 245, subd. (a)(2) [count 4]); shooting at an occupied motor vehicle (§ 246 [count 5]); and felony child endangerment (§ 273a, subd. (a) [counts 6–8]).[2]

The information further alleged: (1) in connection with counts 1 and 5, defendant personally and intentionally discharged a firearm and proximately caused great bodily injury to Elizabeth (§ 12022.53, subd. (d)); (2) in connection with count 5, he personally and intentionally discharged a firearm and proximately caused great bodily injury to V.G. (§ 12022.53, subd. (d)); (3) in connection with counts 2 through 4 and 6 through 8, he personally used a firearm (§ 12022.5, subd. (a)); (4) in connection with counts 2 and 3, he personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)); and (5) in connection with count 4, he personally inflicted great bodily injury on V.G. (§ 12022.7, subd. (a)).

In addition, the information asserted the following circumstances in aggravation: (1) the victim was particularly vulnerable (Cal. Rules of Court, rule 4.421(a)(3)); (2) defendant has engaged in violent conduct that indicates a serious danger to society (*id.*, rule 4.421(b)(1)); (3) the crime involved great violence, great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (*id.*, rule 4.421(a)(1));

---

[1] Unless otherwise indicated, subsequent statutory citations refer to the Penal Code.

[2] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names or initials. No disrespect is intended.

and (4) defendant was armed with or used a weapon at the time of the commission of the crime (*id.*, rule 4.421(a)(2)).

Following a trial, the jury found defendant guilty as charged and found true the special allegations. In a bifurcated proceeding, the trial court found true the circumstances in aggravation. Defendant was sentenced to life with the possibility of parole—plus 25 years to life for the section 12022.53, subdivision (d) enhancement—on count 1 and seven years—plus 25 years to life for one section 12022.53, subdivision (d) enhancement—on count 5, to be served consecutively.[3]

On appeal, defendant raises the following sentencing contentions: (1) the trial court's statement of reasons "does not permit meaningful appellate review"; (2) the court "erroneously believed that consecutive sentences were mandatory"; (3) the court "did not appear to be aware of or properly exercise its discretion pursuant to [Senate Bill No.] 81 [(2021–2022 Reg. Sess.)] and amended . . . section 1385"; and (4) the court's "reliance on the aggravating factors" to impose the upper term on count 5 constituted "a violation of the dual use proscription." (Boldface & some capitalization omitted.) For the reasons set forth below, we affirm the judgment.

## STATEMENT OF FACTS

Elizabeth G. started dating defendant in or around 2016. Approximately five months after the relationship began, the two began "fighting a lot"; on one occasion, he choked her.

In 2017, defendant discovered a message on Elizabeth's phone from a male friend. Under the pretense of going out to dinner, he drove her to a field, took out a knife, and

---

[3] The court imposed 25 years to life for the second section 12022.53, subdivision (d) enhancement on count 5 but stayed execution thereof pursuant to section 654. It also imposed punishment on the remaining counts but likewise stayed execution thereof pursuant to section 654.

threatened to kill either her or her friend. Per defendant's directions, Elizabeth messaged her friend. Thereafter, defendant was pacified.

In July 2018, Elizabeth and defendant started arguing at a restaurant. After they returned home, they went to the bedroom. There, defendant took out a knife and told Elizabeth to "shut up or he was going to stick the knife in [her]." When one of Elizabeth's daughters entered the room, defendant concealed the knife. That same day, Elizabeth took a pregnancy test and confirmed she was pregnant with defendant's son A.G. In late 2018, defendant "changed his number," "blocked [Elizabeth] on his social media accounts," and "disappeared without any fight" and "without any explanation."

In January 2019, Elizabeth gave birth to A.G. Two days later, defendant visited. In June 2019, Elizabeth filed for a temporary restraining order. She subsequently conversed with defendant and "canceled" the order so they could reconcile. Two or three weeks after getting back together, defendant "stopped talking" to Elizabeth and the pair split up permanently.

Between November 2019 and February 2020, defendant met Elizabeth "two to four times" to see A.G. In the days and/or weeks leading up to February 29, 2020, defendant (1) threatened Elizabeth regarding child support payments he "wasn't going to pay"; (2) spoke to Elizabeth over the phone and "said that if she didn't let him see his son, he would come and shoot her"; and (3) went to Elizabeth's residence late at night to see A.G. and—when she did not oblige—warned "something could happen to [her]."

On February 29, 2020, at approximately 3:30 p.m., Elizabeth, A.G., and her daughters V.G. and B.G. (both minors) were sitting in Elizabeth's parked car in front of their residence when defendant arrived in his vehicle. After he stopped right behind Elizabeth's car and got out, Elizabeth saw him holding a pistol equipped with a silencer. Standing about seven feet away from the driver's side window, defendant fired once. Elizabeth sustained wounds to the left hand, right ear, right neck, and right shoulder.

4.

V.G., who was sitting in the front passenger's seat, sustained a wound to the left hand. Defendant fled from the scene.

On November 23, 2020, defendant was arrested in Texas. Sometime afterward, he mailed Elizabeth a letter, which read:

"Hello, Liz.

"Forgive me for the damage I caused you. I want you to know that I am sorry for my mistake. I don't know at what point I made when that happened. I was not in my senses. I was drunk and drugged. Never in my life would I have hurt you because you are the mother of my son. You know that I have asked God that you are fine and my son.

"Liz, I want to ask you forgiveness for the damage I caused, please, I ask you, I didn't really know what I was doing. Look, I'm going to pay with my prison for my fault toward you, please forgive me. I ask you; my life ends here; I'm going to pay happily because I don't understand how I could have hurt the mother of my son. I caused damage to him, and I was also a victim. If it hadn't been for the damn drugs this would not have happened and you know it. But anyhow, I did harm to you, your family, my son and it ruined my life completely.

"You also know that I wish you well with all my heart. This letter is not for you to be sorry for me in court. It is for you to know that I am sorry and ask for your forgiveness for all the harm. Forgive me Liz.

"I wanted to get with you but law enforcement stopped me before I got there. I wanted to see you and ask you for forgiveness face to face and turn myself in after seeing you but I wasn't able to. I've been sending you letters but the address is wrong but I hope you get this one. I wish for you and my son to be well. I want to ask you for a favor I don't believe that you will do it. I want you to send me photos of my son. Please it's only a favor Liz.

"I did not mean to hurt you beautiful. I swear I didn't know what I really did I regret everything with all of my heart. And if I return it was only to see you and my baby. I knew that they were going to capture me I didn't care because I knew I committed this error. But this is the end for me I'm in jail and will never be released. Please tell my son that that I love him and to forgive me too. I never wanted to hurt you Liz you know that. Please forgive me Liz. God bless you and my son. Please forgive Liz, I wish you the best."

5.

## DISCUSSION

### I.	Background

A bench trial on the circumstances in aggravation was held on July 20, 2022.  The prosecution argued the evidence showed (1) defendant was armed with or used a weapon, i.e., a gun (Cal. Rules of Court, rule 4.421(a)(2)); (2) defendant fired into a vehicle containing "an adult as well as three children" (see *id.*, rule 4.421(a)(1) ["The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness."]); (3) the victims "were all in a vehicle with the doors closed, three of the four windows up when a shot was discharged into the vehicle" (see *id.*, rule 4.421(a)(3) ["The victim was particularly vulnerable."]); and (4) defendant "arrived on a residential street, walked up to an occupied vehicle in a neighborhood area, and fired a weapon into the vehicle striking two of the victims" (see *id.*, rule 4.421(b)(1) ["The defendant has engaged in violent conduct that indicates a serious danger to society."]).

Defense counsel maintained counts 1, 2, 3, and 5, "which deal with Elizabeth," "cannot be run consecutively" because "two out of those four counts carry life terms." Likewise, counts 4 through 6 "involving [V.G.]" "cannot be run consecutive" "because one of those carries a life term."  The court replied:

> "Without doing more research, I do believe you're correct in the little bit that I looked at.  [Section] 12022.53(d) it seems to me is one per victim.  So Count 1, the attempted murder, would be 15 to life plus 25 to life for the [section] 12022.53 [enhancement] for Elizabeth.  For [V.G.], Count 5, whatever the [section] 246 is, the 25 to life of the [section 12022.53, subdivision] (d) [enhancement] for [V.G.] would be the only one for [V.G.].
>
> "So I do agree that I think everything else would be double use and if it's allowable would be concurrent.  But anyway – so I agree with your analysis."

Defense counsel also cited section 1170, subdivision (b)(5) for the proposition the court "may not impose an upper term by using the fact [of] any enhancement upon which sentence is imposed under any provision of law."

The court ruled:

> "Okay. So we are not yet at sentencing. And so without considering at this moment the determinant [*sic*] sentencing rules for the counts in which determinant [*sic*] sentencing are relevant which would be – or at least have a sentencing triad – Count 2 without the enhancement, Count 3, Count 4, 5 without the [section 12022.53, subdivision] (d) enhancement, Count 6, 7 and 8, I think the factors just standing alone under [California Rules of Court, rule] 4.421 have been proven beyond a reasonable doubt.
>
> "The Court recalling the facts that came forth in a trial, defendant was armed and did use a weapon in the commission of a crime. The conduct was extremely violent and a serious danger to society. The crimes involved a high degree of cruelty or callousness, and the victims were really like animals in a cage trapped in a car so were particularly vulnerable. And so the Court would find all of those factors true.
>
> "I believe that that's a different question when it comes to [section] 1170[, subdivision ](b) and whether the Court would be able to use any or all of these factors at sentencing. And I think that [defense counsel] may be correct that in some circumstances, and maybe even all of those factors, the Court cannot under [section] 1170[, subdivision ](b). But just for the purposes of proving these aggravating factors, the Court believes the factors have been proven and will find each of the four true."

In a sentencing brief filed August 24, 2022, defense counsel urged the court to impose an aggregate sentence of 32 years to life: seven years on count 5, a concurrent sentence on count 1, and 25 years to life for a single firearm discharge causing great bodily injury enhancement under section 12022.53, subdivision (d). Citing section 1385, as amended by Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1), counsel stated: (1) another section 12022.53, subdivision (d) enhancement "can be stricken if multiple enhancements are alleged or the application of the enhancement could result in a sentence in excess of 20 years"; and (2) "[a] sentence of 32 years to life means that [defendant] will be about 67 years old at the time of his earliest possible parole date"

7.

and "he will no longer be a danger to society" "[a]t that age."[4]  In the event the court planned to impose multiple section 12022.53, subdivision (d) enhancements, counsel asked the court to exercise its discretion and impose lesser firearm use enhancements under section 12022.53, subdivision (b) in view of *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*).[5]

The sentencing hearing was held on September 16, 2022.  Near the outset, defense counsel—again citing section 1170, subdivision (b)(5)—asserted the court's finding of "great violence, great bodily harm, et cetera" "cannot be used as a factor in aggravation because of the [great bodily injury] enhancements that the jury convicted [defendant] of . . . ."  She reiterated counts 1 and 5 should "run concurrent" and "all of the other terms"

---

[4] Section 1385 provides in pertinent part:

"(c)(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

"(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.  [¶] . . . [¶]

"(B) Multiple enhancements are alleged in a single case.  In this instance, all enhancements beyond a single enhancement shall be dismissed.

"(C) The application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed."

[5] In *Tirado*, the California Supreme Court held "a court is not categorically prohibited from imposing a lesser included, uncharged enhancement so long as the prosecution has charged the greater enhancement and the facts supporting imposition of the lesser enhancement have been alleged and found true." (*Tirado*, *supra*, 12 Cal.5th at p. 697.)

should be stayed.  The prosecution countered consecutive sentences were appropriate because there were "two separate victims . . . ."

The court ruled:

> "Again, just for the record, the Court did read and consider the well-drafted sentencing brief and request for sentencing and concurrent sentencing by [defense counsel] on behalf of Mr. Lopez-Ortuno.

> ". . . I've been doing this a long time, and I've seen lots of heinous acts, but your particular act was so cowardly.  To wait until Elizabeth and the kids were in the car, and then walk up with a gun and fire into the car, I don't think there's anything less cowardly than that.  There wasn't a chance to fight back.  You fired at a completely vulnerable victim and children in a car.  You can think a long time about that because you're going to get a long, long time, and you're going to deserve every minute that you get because your conduct is what put you there.

> "You're not eligible for probation.  You were convicted of a violation of 664/187.  The 12022.53 enhancements were found to be true.

> "Under 246 it's mandatory, and the Court does not find, based on your conduct, that a concurrent sentence would be fair or just and; therefor, the Court denies the request to run those concurrent.

> "You're sentenced to seven years determinant [*sic*], followed by two consecutive indeterminant [*sic*] terms of 25 to life, followed by one consecutive indeterminant [*sic*] term of life with the possibility of parole in the state prison."

## II.    Analysis

a. *The trial court's statement of reasons adequately facilitated appellate review.*

"The most fundamental duty of a sentencing court is to state reasons justifying the sentencing choices it makes."  (*People v. Fernandez* (1990) 226 Cal.App.3d 669, 678.)  "Sentence choices that generally require a statement of a reason include . . .  [¶] . . . [¶] . . . [s]electing a term for either an offense or an enhancement;  [¶]  [and] . . . [i]mposing consecutive sentences . . . ."  (Cal. Rules of Court, rule 4.406(b)(3)–(4).)  "If the sentencing judge is required to give reasons for a sentence choice, the judge must state in

9.

simple language the primary factor or factors that support the exercise of discretion." (*Id.*, rule 4.406(a).)  The statement "must be delivered orally on the record."  (*Ibid.*)

In the instant case, the trial court imposed consecutively life with the possibility of parole—plus 25 years to life for the section 12022.53, subdivision (d) enhancement—on count 1 and the aggravated term of seven years—plus 25 years to life for one section 12022.53, subdivision (d) enhancement—on count 5 (see § 246 ["three, five, or seven years"]), commenting defendant "deserve[d] every minute" and concurrent sentences would neither be "fair" nor "just" based on his egregious conduct.  The court emphasized (1) defendant "cowardly" "[w]aited until Elizabeth and the kids were in the car, and then walk[ed] up with a gun and fire[d] into the car"; and (2) Elizabeth and her children were "vulnerable" and "[t]here wasn't a chance to fight back."

Defendant claims the court's statement of reasons was "vague" and "sparse" and "does not permit meaningful appellate review."  (Boldface omitted.)  We disagree.  The court specified "in simple language the primary factor or factors that support[ed] the exercise of discretion."  (Cal. Rules of Court, rule 4.406(a); cf. *People v. Fernandez*, *supra*, 226 Cal.App.3d at p. 682 [trial court "failed to provide any reasons" for imposing aggravated terms and consecutive sentences].)  That the court "did not cite any of the sentencing factors listed in the California Rules of Court" is inconsequential.  (See Cal. Rules of Court, rule 4.406(a) ["The statement need not be in the language of the statute or these rules."].)

Since we conclude the court's statement of reasons "was adequate to permit us to review defendant's . . . claims of sentencing error" (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1775), we now "discuss these claims seriatim" (*ibid.*).[6]

---

[6] Having addressed defendant's contention, we need not address his claim of ineffective assistance of counsel or the Attorney General's claim of forfeiture.

b. *Imposition of consecutive sentences on counts 1 and 5 was warranted.*

"It is well established that a trial court has discretion to determine whether several sentences are to run concurrently or consecutively." (*People v. Bradford* (1976) 17 Cal.3d 8, 20, citing § 669; accord, *People v. Leon* (2010) 181 Cal.App.4th 452, 467 (*Leon*).) "In the absence of a clear showing of abuse, the trial court's discretion in this respect is not to be disturbed on appeal." (*People v. Bradford*, *supra*, at p. 20.)

On the other hand, " '[w]hen the record shows that the trial court proceeded with sentencing on the . . . assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] Defendants are entitled to "sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court," and a court that is unaware of its discretionary authority cannot exercise its informed discretion.' [Citation.]" (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425; accord, *People v. Salazar* (2023) 15 Cal.5th 416, 424.) However, remand " ' "would be an idle act and is not required" ' " (*People v. McDaniels*, *supra*, at p. 425) if " 'the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion" ' " (*People v. Salazar*, *supra*, at p. 424).

Here, defendant contends the trial court "did not act with informed discretion because it erroneously believed that consecutive sentences were mandatory as to counts one and five and as to the firearm enhancements." (Boldface omitted.) He highlights the following remark made by the court at the sentencing hearing: "*Under [section] 246 it's mandatory*, and the Court does not find, based on your conduct, that a concurrent sentence would be fair or just and; therefor, the Court denies the request to run those concurrent." (Italics added.) Assuming, arguendo, the court deemed the imposition of consecutive sentences on counts 1 and 5 as "mandatory" in view of section 246, the court "misunderstood or was unaware of the scope of its discretionary powers" (*People v. Bolian* (2014) 231 Cal.App.4th 1415, 1421) because nothing in section 246's language

prohibiting the malicious and willful discharge of a firearm at an occupied motor vehicle (among other things) insinuates consecutive sentences are compulsory (see at p. 15, *post*).

Nonetheless, the record clearly indicates the same result would have been reached absent the purported error. After mentioning section 246, the court alternatively stated it "d[id] not find, based on [defendant's] conduct, that a concurrent sentence would be fair or just . . . ." Earlier, the court specified defendant "walk[ed] up with a gun and fire[d] into [a] car" occupied by "Elizabeth and the kids." The record demonstrates both Elizabeth and her daughter V.G. sustained gunshot wounds. (See *Leon*, *supra*, 181 Cal.App.4th at pp. 457, 468 [murder and attempted murder convictions based on the defendant's act of firing single gunshot at vehicle].) Consecutive sentences are warranted where "a single act has resulted in crimes against multiple victims." (*Id*. at p. 468.) Accordingly, we uphold the court's imposition of consecutive sentences. (See *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [reviewing court required to uphold a discretionary ruling "if it is correct on any basis, regardless of whether such basis was actually invoked"].)[7]

    c. *The trial court presumably understood its sentencing discretion under section 1385.*

Defendant contends the trial court "did not appear to be aware of or properly exercise its discretion pursuant to [Senate Bill No.] 81 [(2021–2022 Reg. Sess.)] and amended . . . section 1385" (boldface & some capitalization omitted) and "remand is

---

**7** "[O]nly a single aggravating circumstance is required to impose consecutive sentences." (*Leon*, *supra*, 181 Cal.App.4th at p. 469.) Thus, to the extent the court impermissibly relied upon facts other than the "multiple victims factor" (*People v. Valenzuela* (1995) 40 Cal.App.4th 358, 363) to impose consecutive sentences, enhancements, and/or an aggravated term (see Cal. Rules of Court, rule 4.425(b)), any error was harmless (see *Leon*, *supra*, at pp. 468–469).

required for full consideration by the trial court of the sentencing factors set forth in amended . . . section 1385."[8]

"[R]emand is unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1229 (*Brown*).) "The general rule is that a trial court is presumed to have been aware of and followed the applicable law" (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496) and the "presumption of regularity of judicial exercises of discretion appl[ies] to sentencing issues" (*ibid.*). " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. . . .' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) " '[I]t is defendant's burden on appeal to affirmatively demonstrate error . . . . [Citation.]' [Citation.]" (*People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1523.) "Error may not be presumed from a silent record." (*Brown*, *supra*, at p. 1229.)

Defendant argues the court "did not address" "the amendments to . . . section 1385" during the sentencing hearing. This, however, "does not establish on [the] face [of the record] that the trial court misunderstood the scope of [statutory] discretion." (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527; cf. *Brown*, *supra*, 147 Cal.App.4th at p. 1229 ["The court's statements reveal it considered the amount of victim restitution to be mandatory."].) Furthermore, according to the record, the court articulated it "did read and consider the well-drafted sentencing brief and request for sentencing and concurrent

---

[8] Defendant also contends the court "did not address any of the options created by *Tirado*" but does not list this claim "under a separate heading or subheading" in his appellate briefs, a clear violation of rule 8.204(a)(1)(B) of the California Rules of Court. (See *People v. Flint* (2018) 22 Cal.App.5th 983, 995, fn. 11.) Because he "does not set out this distinct argument under a separate heading" (*People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4), he forfeits it (see *ibid.*).

sentencing by [defense counsel]," which referred to section 1385 (as amended by Sen. Bill No. 81 (2021–2022 Reg. Sess.)).

"[W]hen a lower court has made no specific findings of fact, it is presumed that the court made such implied findings as will support the judgment." (*Hall v. Municipal Court* (1974) 10 Cal.3d 641, 643; see *People v. Kelly* (2018) 28 Cal.App.5th 886, 904 ["When there is no 'explicit ruling by the trial court at sentencing, we infer that the court made the finding appropriate to the sentence it imposed . . . .' "].) Hence, in the instant case, we presume the court implicitly determined dismissal of another section 12022.53, subdivision (d) enhancement "would endanger public safety" (§ 1385, subd. (c)(2)) or would not be "in the furtherance of justice" (*id.*, subd. (c)(1)). (See *People v. Mazur* (2023) 97 Cal.App.5th 438, 446; *People v. Ponder* (2023) 96 Cal.App.5th 1042, 1052.) "We must uphold . . . implied findings if substantial evidence supports them." (*People v. Flores* (2021) 60 Cal.App.5th 978, 988.) Given the record before us, which details not only the February 29, 2020 shooting but also defendant's violent tendencies and other problematic behavior since 2016, substantial evidence supports the implied findings. (See § 1385, subd. (c)(2) [" 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."]; *People v. Mazur*, *supra*, at p. 446 [broad "furtherance of justice" standard "allows the court to consider factors beyond public safety in exercising its discretion whether to dismiss an enhancement, including the nature and circumstances of the crimes and the defendant's background, character, and prospects"].)

d. *Imposition of the aggravated term on count 5 was warranted.*

"A trial court's sentencing decision is subject to review for abuse of discretion." (*People v. Hicks* (2017) 17 Cal.App.5th 496, 512.) " '[A] trial court will abuse its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision. [Citations.]' [Citation.]" (*Ibid.*; see *In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 32 [reviewing court required to uphold

14.

a discretionary ruling "if it is correct on any basis, regardless of whether such basis was actually invoked"].)

Defendant contends the court's statement of reasons—i.e., defendant "was 'cowardly' and waited 'until Elizabeth and the kids were in the car' with no 'chance to fight back' and 'fired at a completely vulnerable victim and children in a car' "— "violated the dual use proscription in two ways." First, "the conduct described by the court was an element of the . . . section 246 offense," i.e., "the fact that [defendant] fired into the vehicle while or after the victims were inside was an element of the offense." (See § 246 ["Any person who shall maliciously and willfully discharge a firearm at an . . . occupied motor vehicle . . . is guilty of a felony . . . ."].) Second, " 'shooting a firearm' was also an element of both the offense—shooting a firearm into an occupied motor vehicle—and the . . . section 12022.53, subdivision (d), firearm enhancement." (See § 12022.53, subd. (d) ["[A] person who, in the commission of a felony specified in . . . Section 246 . . . personally and intentionally discharges a firearm and proximately causes great bodily injury, . . . to a person other than an accomplice, shall be punished . . . ."].)

"A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term." (Cal. Rules of Court, rule 4.420(h); see *People v. Marshall* (1987) 196 Cal.App.3d 1253, 1259.) "However, where the facts surrounding the charged offense exceed the minimum necessary to establish the elements of the crime, the trial court can use such evidence to aggravate the sentence." (*People v. Castorena* (1996) 51 Cal.App.4th 558, 562.)

"The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1170, subd. (b)(5); see Cal. Rules of Court, rule 4.420(g) ["[A] fact charged and found as an enhancement may be used as a reason for imposing a particular term only if the court has discretion to strike the punishment for the enhancement and does so."].) "[W]hen an appellant claims the trial court made an impermissible dual use of a fact as both an enhancement and an

15.

aggravating factor [citation], the reviewing court looks at whether the trial court *could have* based the aggravating factor on evidence *other* than that which gave rise to the enhancement. If so, the sentence may stand." (*People v. Garcia*, *supra*, 32 Cal.App.4th at p. 1775.) "If, on the other hand, the trial court could *only* have based the aggravating factor on the evidence giving rise to the enhancement, the sentence must be reversed." (*Ibid.*)

We are satisfied the imposition of the aggravated term on count 5 could have been based on facts beyond the minimum needed to establish either the elements of a section 246 violation or a section 12022.53, subdivision (d) enhancement. Among other things, the rationale offered by the court alluded to the particular vulnerability of the victims (Cal. Rules of Court, rule 4.421(a)(3)) and the high degree of callousness involved in the shooting (*id.*, rule 4.421(a)(1)). "A victim is considered particularly vulnerable 'where the age or physical characteristics of the victim, or the circumstances under which the crime is committed, make the defendant's act especially contemptible.' [Citation.]" (*People v. Lewis* (2023) 88 Cal.App.5th 1125, 1138.) Callousness refers to "a character trait implying cold bloodedness or unfeeling" (*People v. Nevill* (1985) 167 Cal.App.3d 198, 206) and manifests whenever the manner of a crime's commission in a case at bar is distinctively worse compared to other ways in which the offense could have been committed (*People v. Harvey* (1984) 163 Cal.App.3d 90, 117). Here, defendant opened fire on his unarmed and unsuspecting ex-girlfriend notwithstanding the presence of her three minor children, including defendant's one-year-old son. (Cf. *People v. Nevill*, *supra*, at pp. 203–204, 206 [the defendant shot his wife while their 16-month-old baby stood beside her].) "There was no provocation of any sort" (*People v. Harvey*, *supra*, at p. 117) and the victims were "attacked under circumstances where [they] had no

opportunity to defend [themselves]" (*ibid.*).  Accordingly, we uphold the court's imposition of the aggravated term.[9]

## DISPOSITION

The judgment is affirmed.


DETJEN, Acting P. J.

WE CONCUR:


PEÑA, J.


SMITH, J.

---

[9] Having addressed defendant's contention, we need not address his claim of ineffective assistance of counsel or the Attorney General's claim of forfeiture.